## STATE v. ROBERT COSTIN.

*Embezzlement—Master and Servant.*

1. Where goods come into the possession of a servant, out of the ordinary course of his employment, but in pursuance of special directions from the master to receive them, and the servant embezzle the same, he is indictable·under the statute.

2. Therefore, where one employed by a merchant "to sweep out the store, and wait about the store, but not as clerk," was authorized by the merchant to take a lot of shoes and sell them during his visit to a neighboring town, which he did, and converted the money to his own use; *Held,* that he was a servant within the meaning of the embezzlement act, and received the goods by virtue of his employment.

INDICTMENT for embezzlement tried at October Term, 1883, of NEW HANOVER Criminal Court, before *Meares, J.*

The defendant is charged with the embezzlement of money, the property of R. G. Gause & Co., and the proof was that he had been in their employment about six weeks, for the purpose of sweeping out their store and waiting about the store, but not as a clerk; that on the 27th of June, 1883, their was an assemblage of people at Point Caswell, in Pender county, about forty miles by water from the city of Wilmington, the prosecutor's place of business; that the defendant took passage on a steamer to attend the occasion of his own accord, but with the knowledge of his employers; that the firm had for sale in their store thirty-two pairs of children's shoes, and before his departure the defendant proposed to one of the firm to take the shoes and sell them at Point Caswell, which proposition was agreed to, with the instruction to defendant that he should not sell them for less than fifty cents a pair.   During the trip the defendant was principally engaged in selling soda water, lemonade, &c., on his own account, to passengers on board the steamer, and while on the steamer he also sold the lot of shoes to one Sherman at only

twenty-five cents a pair. Sherman keeps a store at Point Caswell, and paid the defendant in cash for the shoes. After the defendant's return to Wilmington, he told Gause several times that he had sold the shoes to Sherman, but had not received the money for them, having sold the same on credit, and that he promised to pay for them whenever the defendant should come after the money. The money was never collected of the defendant.

The instruction asked by the defendant, and refused by the judge, is set out in the opinion. Verdict of guilty; judgment; appeal by the defendant.

*Attorney-General,* for the State.
No counsel for defendant.

MERRIMON, J. In this case the defendant is indicted for embezzlement under Bat. Rev., ch. 32, §136.

On the trial he prayed the court to give the jury this instruction: That if the defendant was employed only for the purpose of sweeping out the store and waiting about the store of R. G. Gause & Co., and during such employment he was allowed to take the shoes to Point Caswell, for the purpose of selling them at fifty cents per pair, and he sold them at twenty-five cents per pair, he could not be convicted, because he was not a servant in contemplation of the statute, at the time of the sale, and because he sold for a less price than he was authorized to do."

The court declined to give the jury such instruction, and the defendant excepted.

The exception cannot be sustained. In our judgment, the defendant was a servant within the meaning of the statute, and what he did constituted the offence of embezzlement under it.

The manifest purpose of the statute is to protect individuals and partnerships against frauds upon them in respect to money, goods and chattels, and the several species of credit mentioned

in it, on the part of their agents, clerks and servants; and corporations in like manner, against their officers, agents, clerks and servants; and other persons and corporations in like manner, when money, goods and chattels, and such other things, shall come into their possession, or under their care, by virtue of such office, or such other employment. It is intended by it to sustain, protect and preserve the integrity of an essential and important confidential relation, that is almost universal in the business ramifications of life. It is broad and comprehensive in its purpose, and it is scarcely less so in its terms, as we shall see. And it must be construed in this broad view of the purpose of the legislature in enacting it.

Trust and confidence are raised by the relation specified in the statute, and a breach of this trust and confidence is of the essence of the offence denounced. In their absence, there can be no offence. Whenever the officer ,agent, clerk or servant, by virtue of such relation, directly or indirectly, in the regular course of his business, or *pro hac vice,* a special service is assigned him and he accepts the same, and money, goods and chattels, or any of the credits specified in the statute, shall come into his possession, or under his care, and he commits a fraudulent breach of the trust and confidence so subsisting, the offence is complete. The language of the statute in respect to the possession of the money, goods and chattels and credits named is, " which shall have come into his possession or under his care *by virtue* of such office or employment." The possession and care are not confined to such as come in the ordinary course of business, but as well such as come *by virtue.* of the relation. The words " *by virtue* " are very broad, and serve well to effectuate the object for which they were employed. Hence, it has been held, in construing a statute similar to the one under consideration, that where the thing embezzled came into the possession of the servant, out of the ordinary course of employment, in pursuance of a special direction from the master to receive it, the act came within the meaning of the statute. *Rex* v. *Smith,*

Russ. & R., 516; *People* v. *Dalton,* 15 Wend., 581; *Rex* v.
*Hughes,* 1 Moody, 370.

The relation of employer and agent or clerk, or master and
servant, does not depend on the length of time it shall continue,
if it is established at all; if for but one occasion or transaction,
that will be sufficient. There are no words of limitation in this
respect in the statute. *Rex* v. *Hughes, supra; Rex* v. *Spencer,*
Russ. & R., 299; Whar. C. L., §1905, *et seq.;* 2 Russell, 178;
2 Bish. C. L., §359, *et seq.*

In the case before us, it appears that the defendant " had been
in the employment of the firm of R. G. Gause & Co. about six
weeks, and that he was employed for the purpose of sweeping
the store, and *waiting about the store,* but not as clerk.

Now, to *wait about the store* implies that he who is to so wait
is ready to do, and will do such service, and in variety, as his
employer may command him to do, generally or specially, in
connection with the business of the store. He is not regularly
a salesman, but very considerable trust must be reposed in him.
He is essential about such a business, and in many instances,
indispensable. He must come in contact with goods of greater
or less value, each day of his service; especially, his duties are
varied. He is to sweep the floor, make the fires, bring water,
put packages of goods in order, go on errands, deliver packages
of goods to customers, and receive the money for them when
commanded to do so. He is to be in and around the store, and
a man-of-all-work in that connection. He is not regularly a
salesman, and yet, occasionally, he might do special service of
that character, if commanded. His place is one of considerable
responsibility, requiring integrity of character. His employer
might necessarily repose a considerable degree of confidence in
him. That he waits about the store, a place where merchandise
is set up in greater or less quantities to be sold, makes such
employment the more important. We think this not an unrea-
sonable sphere of duties for one who " waits about the store."

STATE *v.* COSTIN.

Such employment establishes the relation of master and servant, in contemplation of the statute. It would be unreasonable to suppose that it was not intended to embrace and protect such a business relation. It is a common one, an essential one, and one of importance. There are small, insignificant stores, and no great importance attaches to the servants about them, and there are great ones too; but the statute embraces and protects the proprietors of all against the frauds of faithless servants.

The defendant was the servant of his employers in the sense of the statute, and if he got possession of their money by *virtue of this relation* to them, then he would be guilty.

We think, also, that apart from the defendant's relation to his employers, as servant waiting about the store, the same relation was established as to the transaction developed by the evidence as to the shoes. He agreed with his employers to take the shoes to Point Caswell, sell them for fifty cents a pair, and deliver the money he might get for them to his employers. If he did not accept the service as to the shoes by virtue of being servant about the store, he was entitled to compensation specially for selling them, and the relation of master and servant, as to the shoes, was raised in the eye of the law. In any view of the case, the defendant was a servant, as charged in the indictment. *Rex* v. *Hughes, supra;* 2 Bish. C. L., §340.

The defendant insists, that as he sold the shoes for a less sum than fifty cents per pair, as he was instructed to do, but sold them for twenty-five cents per pair, and received the money for them at that price, he is not guilty of embezzlement.

The defendant agreed to sell the shoes as instructed, get the money for them and deliver it to his employers. He sold them for a less price than he was authorized to do, received the money for them for his employers, and fraudulently disposed of and applied it to his own use. The money was not his; he received it for his employers; it belonged to them, at all events, until they disowned the sale, and this they did not do.

An agent, clerk or servant cannot thus throw off his relation to his employer and evade the statute. It does not lie in the

mouth of the defendant to say that he did not sell the shoes for his employers, and the money was not theirs. He is estopped in this respect. He cannot be allowed thus to take advantage of his own wrong and evade the law. *Nullus commodum capere potest de injuria sua propria* is a wholesome maxim of the law, and we see no substantial reason why it should not apply in a case like this.

The statute is too comprehensive, too practical and thorough in its spirit and purpose to allow so subtle a distinction as that insisted upon to impair, indeed destroy, in large measure its purpose and usefulness.

If such a shift could be held to save offenders from its penalties, the statute would become almost a practical nullity in some of its most important features. Dishonest agents, clerks and servants would constantly contrive to repudiate—throw off—their relation to their employer by a fraudulent departure from their instructions in respect to property in their possession and control, and thus evade the law. We cannot think that the legislature, or the statute in its terms or spirit, ever contemplated such an interpretation of its meaning. We do not think it reasonable, and we cannot so construe its meaning. There is no good reason that we can conceive of why the statute should receive the construction contended for by the defendant. All the considerations that prompted its enactment lead us to construe it as we have done. 2 Bish., *supra*, §§351, 367; *Ex-parte Hadley*, 31 Cal., 108.

There is no error, and the judgment must be affirmed, and it is so ordered. Let this be certified.

No error.                                        Affirmed.