CHARLES M. CHAMBERLAIN V. STATE OF NEBRASKA.

FILED MARCH 5, 1908.   No. 14,755.

1. **Criminal Law:** INSTRUCTIONS. Instructions must be predicated on the evidence; and in the prosecution of a bank officer for embezzlement it is error to submit to the jury the fact of his having overdrawn an account with the bank as proof of guilt, unless the evidence is sufficient to establish every element necessary to make the transaction criminal in its nature.

2. ———: ———: BURDEN OF PROOF. In a criminal prosecution the burden is upon the state to establish every element of the crime charged beyond a reasonable doubt; and an instruction which shifts the burden of proof to the defendant, and informs the jury that the evidence must show beyond a reasonable doubt that the defendant in doing the act complained of acted in good faith, and was not actuated by improper motives, is erroneous.

3. ———: EVIDENCE. Under an indictment charging a bank officer with embezzling its funds on a certain date, evidence tending to show embezzlement of different amounts at different times before that date, and the manner in which he conducted the business of the bank, is admissible for the purpose of assisting the jury in determining the defendant's guilt or innocence of the charge set forth in the indictment.

4. **Embezzlement:** INDICTMENT. An indictment for embezzlement is sufficient if it sets forth the crime in language equivalent to that contained in the statute creating and defining that crime, without averring the particular acts in which the offense consists.

ERROR to the district court for Nemaha county: JOHN
B. RAPER, JUDGE. *Reversed.*

*Halleck F. Rose, W. B. Comstock* and *Neal & Quacken-bush,* for plaintiff in error.

*W. T. Thompson, Attorney General, George A. Adams*
and *Jay C. Moore, contra.*

BARNES, C. J.

At the February, 1903, term of the district court for
Johnson county a grand jury returned 18 indictments
against Charles M. Chamberlain, who was the defendant
in the court below, each of which charged him with a
specific act of embezzlement of funds of the Chamberlain
Banking House of Tecumseh, in that county. On a change
of venue he was tried in the district court for Nemaha
county on one of the indictments, which reads as follows:
"That Charles M. Chamberlain, late of the county afore-
said, on the 25th day of August, in the year of our Lord
1902, in the county of Johnson, and state of Nebraska,
aforesaid, then and there being, and then and there being
the cashier of the Chamberlain Banking House, a corpora-
tion then and there engaged in banking, did then and there
embezzle, abstract and wilfully misapply of the moneys
and funds of the said Chamberlain Banking House, to wit,
the sum of $10,000 in money, with intent then and there
to injure and defraud said Chamberlain Banking House
out of said money, and each and every part thereof, he,
the said Charles M. Chamberlain, then and there having
received and obtained the said money as such cashier of
the said Chamberlain Banking House, and having then
and there said money in his possession, control and man-
agement as such cashier of said banking house." On mo-
tion of the defendant, and by order of the trial court, the
words "abstract and wilfully misapply" were eliminated
from the indictment, and so the single specific charge on
which defendant was placed on trial was the embezzle-

ment of $10,000 on the 25th day of August, 1902. The trial resulted in his conviction. He was sentenced to hard labor in the state penitentiary for the period of five years, and has prosecuted error to this court.

1. To establish the charge contained in the indictment, the state, over defendant's objection, introduced evidence of a certain transaction, in substance, as follows: On April 5, 1895, the defendant and his brother Clarence executed a demand note for $2,000 payable to Louis Stull, cashier, which came into the possession of the Industrial Savings Bank. Suit was brought on the note in the district court for Lancaster county, and a judgment was obtained thereon against the makers. In payment of that judgment the firm of Chamberlain Brothers, of which the defendant was a member, and which at that time had a deposit account with the Chamberlain Banking House, drew its check on that institution for $2,500, which was presented to, and paid by, the bank on the 29th day of March, 1902. The payment of the check caused an overdraft of the account of Chamberlain Brothers amounting to $1,765.15. The item was charged to the deposit account of the drawers of the check, and not to any of the general accounts of the bank. We find no proof in the record tending to show that the check causing the overdraft was paid without the assent of the directors of the bank, or a majority of them. No proof was offered by the state to show the pecuniary irresponsibility of the firm of Chamberlain Brothers, or its members, at the time the check was cashed, or prior or subsequent thereto. The check, which was drawn by defendant, was charged to the account of the makers of the note, which it paid, and it was left openly on file in the bank to evidence the debt which its payment created. Payment by a bank upon a check of a sum in excess of the credit balance of an ordinary depositor in the usual course of business, if done with the assent of a majority of directors, is a loan to the depositor of the amount of the overdraft created by the payment. Zane, Banks and Banking (1st ed.), sec. 160; *Potter v.*

*United States,* 155 U. S. 438; 5 Cyc. 583. The banking act of this state does not make such a transaction unlawful, even where the loan is made to an officer of the bank, except it be done without obtaining the approval of a majority of the directors. Comp. St. 1907, ch. 8, sec. 26. By this statute a substantive element of the offense described therein is that the funds must have been borrowed by the officer without having first obtained the approval of a majority of the directors of the bank. So, in order to make the transaction above described criminal in its nature, it was necessary for the state to allege and prove that the overdraft in question was made without the consent of a majority of the directors of the bank, or with the intention of cheating and defrauding that institution. Notwithstanding this fact, the court gave the ninth instruction requested by the prosecutor predicated on the transaction above described, and which is now assigned as error, by which the jury were told, in substance, that, if the check in question was drawn for, or in payment of, an individual debt or obligation of the defendant, or of Chamberlain Brothers, or of C. M. and C. K. Chamberlain, that the banking house, upon the authority of the defendant, or by his direction, cashed or paid the check out of its own money and charged the same to the account of Chamberlain Brothers, and by so doing overdrew that account with the bank in the sum of $1,765.15, and that such payment was made under such circumstances as were liable to imperil the interests of the bank and cause it to lose the amount of the overdraft, then the payment of the check by him, or at his direction as cashier, if done with intent to injure or defraud the bank, would be embezzlement. It may be conceded that this instruction, if based upon sufficient evidence, is a correct statement of the law; but it must be remembered that the state produced no evidence showing or tending to show that the payment of the check was made under circumstances liable to imperil the interests of the bank, or cause the loss of the amount of the overdraft, or that it was done with intent to injure and

defraud that institution. It is a well-established rule that instructions must be predicated upon the evidence; and in a criminal prosecution an instruction which submits to the jury the question of the defendant's guilt or innocence of a criminal offense, where the state has produced no evidence tending to prove an element necessary to be shown to make the particular transaction in question criminal in its nature, is prejudicial, and calls for a reversal of a judgment of conviction. As above stated, we find no evidence in the record relating to the matter of the overdraft in question which shows, or tends to show, that at the time the defendant drew the check which created the overdraft it was his intention to cheat and defraud the bank, or that Chamberlain Brothers were insolvent. It is but fair to say that at the time when the bank closed its doors the greater part of the overdraft was unpaid; yet this alone is not sufficient to establish the fact, beyond a reasonable doubt, that the defendant when he drew the check intended to cheat and defraud the bank, for he, or the firm of Chamberlain Brothers, may have fully intended to repay the amount of the overdraft and have had the ability to do so. Indeed, in the absence of evidence direct or circumstantial to the contrary, the presumption is that his intention was that the overdraft would be paid either by himself or the firm. It follows that for the giving of this instruction the judgment of the district court should be reversed.

2. It is strenuously urged that the district court erred in giving the fourth instruction requested by the state. In this connection it is necessary to state the facts on which this instruction was predicated. The evidence discloses that on the 13th day of August, 1902, the bank teller credited the individual deposit account of the defendant with an item of $4,600 salary; that the teller made a computation to determine the accuracy of the credit; that in so doing he took the general ledger of the bank and ran back through the expense account until he found the date upon which the defendant had received his last credit for

salary.  He testified that he knew the amount per month
to which the defendant was entitled, and that the defend-
ant had not drawn any salary for 46 months prior to that
date.  The evidence of the teller on this point was corrob-
orated by several other witnesses for the state.  In fact
there seems to be no dispute about this matter.  It also
appears that after the entry of the credit, and before the
date of the alleged embezzlement, the defendant checked
out the deposit in question for various purposes.  It was
the contention of the state that this transaction consti-
tuted embezzlement, because the defendant had so man-
aged the affairs of the bank that he was largely indebted
to that institution at the time the credit was given, and
that he obtained the credit and withdrew the funds for
the purpose of injuring and defrauding the bank.

The first clause of the instruction reads in part as fol-
lows: "If you find from the evidence, beyond a reasonable
doubt, that the defendant while he was cashier of the said
Chamberlain Banking House kept an individual account
of his own, and in his own name, in said banking house,
and that on or about the 13th day of August, 1902, he
credited his said individual account with an item of $4,600
as salary for 46 months, and that at said time he in good
faith believed he had a right to so credit his said account
with said amount, or that he in good faith believed said
bank was owing him said amount, then you are instructed
that the placing of such credit to his individual account,
and afterwards drawing the money out on his checks or
otherwise, would not be embezzlement of such money."  By
the second clause of the instruction the jury were told,
in substance, that, if they should find from the evidence,
beyond a reasonable doubt, that the defendant at said time
was owing said banking house as much as or more than
$4,600, and that he knew the said banking house was not
owing him said amount, or any part thereof, or if he was
largely indebted to said banking house for money he had
taken from the same and wrongfully appropriated to his

own use, or to the use of himself and others, and that he placed said amount to his credit, or caused it to be placed there in order that he might thereafter draw that sum from the bank under an apparent right to do so, but with the intent to convert it to his own use, and that the placing of the credit to his own account was intended by him as a scheme to cover or better enable him to wrongfully convert the same to his own use, and that he did thereafter wrongfully draw said money or any part thereof from the bank and convert it to his own use, with intent to injure and defraud the bank, then he was guilty of embezzling the same. It seems clear that by the first clause of the instruction the court directly and unequivocally stated to the jury that before the defendant could escape responsibility for embezzlement of the item in question the proof must be such as would satisfy them, beyond a reasonable doubt, that the defendant in good faith believed he had a right to so credit his account, or that in good faith he believed that the bank was owing him said amount. It seems plain that this not only denied the accused the benefit of reasonable doubt, and precluded the jury from considering whether the credit was made for a debt in fact owing by the bank, but it also limited the defendant's right to escape criminal punishment by the narrow issue as to whether he believed, though erroneously, there was a legal liability for the debt upon the part of the bank, and on this issue the court imposed upon him the burden of proof to show that he entertained such belief beyond a reasonable doubt. That it was error for the court at any stage of the proceedings to impose upon the defendant the burden of proof to establish his innocence of the crime charged, or any particular element of it, there can be no question. It is contended by the state, however, that the error, if any, in the first clause of the instruction is cured by the second portion of it, the substance of which is above stated; and it is insisted that the whole paragraph should be read and construed together, and when thus considered it is a correct statement of the law. We cannot give it

such a construction. It clearly informed the jury that if they should find, beyond a reasonable doubt, that at the time the credit in question was made the defendant in good faith believed that he had a right to it, that the bank was owing him that amount, then the placing of the item to his individual credit, and afterwards drawing the money out on his checks or otherwise, would not be embezzlement, when they should have been told that if they entertained a reasonable doubt as to whether the money represented by the item of $4,600 salary was actually owing by the bank to the defendant, or that the defendant honestly believed it to be due, and caused the credit to be entered to his personal account in that belief, then the transaction in question should not be considered by them in determining the guilt or innocence of the defendant of the crime charged against him. So we are of the opinion that the giving of this instruction requires a reversal of the judgment of the trial court.

3. The record of the trial discloses that the state, over the defendant's objections, was allowed to introduce evidence of his manner of conducting the business of the bank, and of many of his transactions with that institution occurring at different times, many of them long prior to the time when the offense for which he was on trial is alleged to have been committed; and it is contended that this was reversible error. This contention cannot be sustained, for it has often been held, on principle and precedent, that the state in such cases may introduce evidence of separate and distinct acts or transactions, which may be embezzlement in themselves, tending to prove the substantive offense charged. *State v. Reinhart,* 26 Or. 466; *Brown v. State,* 18 Ohio St. 496; 1 Bishop, New Criminal Procedure, sec. 397; *State v. Dale,* 8 Or. 229; *Jackson v. State,* 76 Ga. 551; *State v. Pratt,* 98 Mo. 482, 11 S. W. 977; *Campbell v. State,* 35 Ohio St. 70. In *Ker v. People,* 110 Ill. 627, 646, it is said: "The body of the crime consists of many acts done by virtue of the confidential relations existing between the employer and

the employee, with funds, moneys or securities over which the servant is given care or custody, in whole or in part, by virtue of his employment. The separate acts may not be susceptible of direct proof, but the aggregate result is, and that is embezzlement." This doctrine is not only supported by reason and authority, but is proper and just. The rule contended for by the defendant in this case would render it exceedingly difficult, if not impossible, in many cases to secure a conviction of a confidential agent or servant of a firm or corporation or a bank officer intrusted with the custody and control of its funds. The trust and confidence reposed in such employee or officer affords him the amplest opportunity to misappropriate the funds intrusted to his care, and makes it almost, if not quite, impossible to prove just when and how it was done. But the ultimate fact of embezzlement is susceptible of proof, and that is the act against which the statute is directed. The crime, as in the case at bar, may consist of many acts done in a series of years, and the fact at last be discovered that the bank's funds have been embezzled, and yet it may be impossible for the prosecution to prove the exact time and manner of each or any separate act of conversion. In such a case, if the state should be compelled to rely for conviction upon a single act, the accused, although he might be guilty of embezzling large sums of money in the aggregate, would probably escape conviction. The law should not afford exemption from just and merited punishment on mere technical grounds which do not in any way affect the guilt or innocence of the defendant or the merits of the case.

It appears, however, that in the prosecution of this case the state treated the separate and distinct acts introduced in evidence as substantive crimes; and it is contended that the court erred in instructing the jury, in substance, that if they should find that the defendant committed such acts, beyond a reasonable doubt, they should then find him guilty of the crime charged in the

indictment on which he was being tried. We think there is much force in this criticism. Where the state is permitted to introduce evidence of separate and distinct transactions not set forth or described in the indictment, each of which in itself may amount to a criminal offense, the court should instruct the jury that evidence of such transactions is received and should only be considered by them for the purpose of assisting them in determining the defendant's guilt or innocence of the particular crime charged in the indictment. We find from an examination of the record that the state was allowed in this case to introduce in evidence a great many of the defendant's transactions with the bank occurring at different times, some of them being prior to the 25th day of August, 1902, similar to those above described, and the record contains numerous assignments of error therefor. To discuss and determine all of them would extend our opinion to an unreasonable length, and serve no useful purpose. What we have already said disposes of all similar questions, and such assignments will receive no further consideration. Again, it appears that the case was treated by the prosecuting attorney as though the defendant was an officer on trial for embezzling public money, instead of an agent or cashier of a bank charged with the embezzlement of private funds, and it is proper to observe that much more must be shown in a case like the one at bar, in order to procure a conviction, than is necessary to be proved to sustain a charge of embezzlement of public funds.

4. Finally, it appears that the defendant has, at all times, challenged the sufficiency of the indictment, and now contends that it is insufficient in form and substance to charge him with the crime of embezzlement. It is not only proper but necessary for us to determine this question before concluding our opinion. The principal criticism of the indictment is that it does not contain an averment that the money in question was converted by the defendant to his own use, "without the assent of the

bank," and it is claimed that the omission of that allegation renders the indictment fatally defective. We find, however, that the charge follows the language of section 135 of the criminal code, under which the indictment was drawn. The rule is that it is generally sufficient, in charging a statutory crime, to follow the language of the statutes defining it, and we are not convinced that the present instance is within any of the exceptions to that rule. The word "embezzle" is defined by section 121 of the criminal code, and wherever that word appears in the subsequent sections of the act it should be construed to mean and include the elements of that definition. In *Bartley v. State,* 53 Neb. 310, it is said: "An information for embezzlement is sufficient if it sets forth the crime in the language of the statute creating it, without averring the particular acts in which the offense consisted." In *Mills v. State,* 53 Neb. 263, and in *Jackson v. State, supra,* it was held that the word "embezzle" includes within its import the conversion to his own use of the money alleged to have been embezzled by the accused. Again, it is alleged in the indictment in this case that the defendent did embezzle of the funds of the said Chamberlain Banking House the sum of $10,000 in money, with intent to injure and defraud said Chamberlain Banking House out of said money, and each and every part thereof; and it would seem that the words "with intent then and there to injure and defraud" are broad enough and amply sufficient to include the charge that the act was done without the consent of the bank. Indeed, they may be said to be the equivalent of such an allegation. So we are of opinion that the indictment is sufficient to charge the defendant with the crime of embezzlement.

As above stated, the record contains many other assignments of error. Some of them, without doubt, are substantial in their nature. But what we have already said is sufficient to prevent a recurrence of similar errors in case of another trial. For the errors above men-

tioned, the judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED.