(December 24, 1918.)

## STATE, Respondent, v. W. P. DAWE, Appellant.

[177 Pac. 393.]

EMBEZZLEMENT — CONTINUING OFFENSE — ORDINANCES, GENUINENESS, PRIMA FACIE EVIDENCE OF—MUNICIPAL OFFICER OR AGENT—INDICTMENT—STATUTE APPLICABLE—ESTOPPEL.

1. Where provision is made by statute for proving a municipal ordinance by a copy thereof certified by the proper city official, a certificate in the form prescribed by law and signed by a person assuming to act in such official capacity is *prima facie* evidence of the genuineness of the ordinance, entitling it to be admitted in evidence without other proof.

2. When, in compliance with the statute, an ordinance has been duly certified by the proper custodian thereof, so as to entitle it to be admitted at the time of certification, its admissibility in evidence is not disturbed by the lapse of time or by the passing out of the person then in office and the appointment of a new custodian.

3. Where one systematically institutes a continuous series of withholding of his principal's money for the purpose of acquiring for his own use ultimately a large sum, the series of acts constitutes but one offense, namely, embezzlement of the aggregate amount so withheld.

4. When the proof establishes the fact that the embezzlement of an aggregate amount has been accomplished by a continuous series of withholding certain sums not separately capable of direct proof, it is proper to treat the crime as one continuous offense, and such proof is sufficient to sustain a conviction of the embezzlement of such aggregate amount.

5. A city clerk who assumes to act on behalf of the city in collecting moneys of the city under purported ordinances authorizing him to so act, and who converts city money so collected to his own use, cannot defeat a prosecution for embezzlement upon the theory that because the purported ordinances were void, he had no authority as such city clerk to receive the moneys, and will not be heard to say that the ordinances were of no legal effect, and that he received the sums in question in a private capacity as a mere agent of the city.

6. Under such circumstances, the city clerk was properly indicted under Rev. Codes, sec. 7066, and this would be true even though the facts should necessitate his indictment as an agent rather than an officer. The statute applies to each alike, and if one converts to his own use money belonging to a municipality, which comes into

his possession while acting in the capacity either of officer or of agent, the statute makes him guilty of embezzlement. It is expressly designed to cover all cases of embezzlement of public funds by public servants.

[As to what constitutes embezzlement and who may commit the crime, see note in 87 **Am. St.** 515.]

APPEAL from the District Court of the Ninth Judicial District, for Bonneville County. Hon. James G. Gwinn, Judge.

Prosecution for embezzlement. Judgment of conviction. *Affirmed.*

Otto E. McCutcheon and Briggs & McConnell, for Appellant.

Where each taking is a separate and distinct offense, the court should, on motion of the defendant, compel and require the state to elect upon which of the alleged several takings it will rely for a conviction. (*Edelhoff v. State,* 5 Wyo. 19, 36 Pac. 627.)

Where a person is a public officer and his duties are prescribed by law, he is never estopped, even when questioned for unlawful acts, to plead the law. If the defendant was not authorized by law to collect the moneys which the state alleges he did collect, the moneys certainly were not paid to the defendant by virtue of his trust, that is, by virtue of his office, but if received by defendant, were received simply as an agent. (*People v. Shearer,* 143 Cal. 66, 76 Pac. 813; *Dickey v. State,* 65 Tex. Cr. 374, 144 S. W. 271; *Moore v. State,* 53 Neb. 831, 74 N. W. 319; *Hartnett v. State,* 56 Tex. Cr. 281, 133 Am. St. 971, 117 S. W. 855, 23 L. R. A., N. S., 761; *State v. Bolin,* 110 Mo. 209, 19 S. W. 650.)

T. A. Walters, Atty. General, A. C. Hindman, J. P. Pope and J. Ward Arney, Assistants, for Respondent.

An ordinance shown in evidence to be in force at a given date is *prima facie* presumed to be still in force at the date of the subsequent action involving it. (*O'Leary v. Chicago,*

*R. I. & P. Ry. Co.* (Iowa), 103 N. W. 362; McQuillin on Municipal Corporations, sec. 860, and cases there cited.)

"The official character of the officer as the legal custodian of the document, and therefore authorized to certify a copy of it, is proved *prima facie* by the certificate itself." (*Galvin v. Palmer*, 113 Cal. 46, 45 Pac. 172; *Mott v. Smith*, 16 Cal. 533.)

The evidence shows the crime to have been a continuing offense committed by a trusted servant by means of a series of connected transactions. It was in fact and in law a single embezzlement. (*State v. Reinhart*, 26 Or. 466, 38 Pac. 822; *Brown v. State*, 18 Ohio St. 496; *Ker v. People*, 110 Ill. 627, 646, 51 Am. Rep. 706; *Willis v. State*, 134 Ala. 429, 33 So. 226.)

The defendant systematically instituted a continuous series of withholding of his principal's money for the purpose of acquiring for his own use, ultimately, a large sum. While this is the case, the doctrine of election does not apply, since the series of acts would constitute but one offense, and each separate act would not be a separate and distinct offense. (*Carl v. State*, 125 Ala. 89, 104, 28 So. 505; *Gravatt v. State*, 25 Ohio St. 162; *State v. Noland*, 111 Mo. 473, 19 S. W. 715, 722.)

Where an officer receives public money without authority and appropriates it to his own use, he is estopped to set up his lack of authority as a defense, and is guilty of embezzlement as a public officer. (*People v. Royce*, 106 Cal. 173, 37 Pac. 630, 39 Pac. 524; *State v. Spaulding*, 24 Kan. 1; *People v. Robertson*, 6 Cal. App. 514, 92 Pac. 498; *Denton v. State*, 77 Md. 527, 26 Atl. 1022; *State v. Pohlmeyer*, 59 Ohio St. 491, 52 N. E. 1027; *People v. Hawkins*, 106 Mich. 479, 64 N. W. 736; *State v. Tumey*, 81 Ind. 559; *State v. O'Brien*, 94 Tenn. 79, 28 S. W. 311, 26 L. R. A. 252.)

Where a public official acts in collecting the public revenues under color of ordinance or statute, even though they be void or unconstitutional, such money belongs to the public, and such officer assumes the responsibility in law of a *de facto* officer. (*Chandler v. State*, 1 Lea (Tenn.), 296; *Village of*

*Olean v. King,* 116 N. Y. 355, 22 N. E. 559; *Swan v. State,* 48 Tex. 120; *Morris v. State,* 47 Tex. 583; *Waters v. State,* 1 Gill (Md.), 302; *Commonwealth v. City of Philadelphia,* 27 Pa. St. 497; *Middleton v. State,* 120 Ind. 166, 22 N. E. 123; *Mayor etc. of Hoboken v. Harrison,* 30 N. J. L. 73.)

A *de facto* officer accused of embezzlement cannot defend on the ground that he had no right to receive the money as a public officer. (See 23 L. R. A., N. S., 763, for collection of cases.)

BUDGE, C. J.—The appellant was convicted in the district court for Bonneville county of the crime of embezzlement. This appeal is from the judgment.

Appellant specifies fourteen separate assignments of error. The first five, relating to the admission of evidence, will be discussed together.

Objection is made to the admission of State's Exhibits "C," "D," "F," "G" and "T," purporting to be ordinances of the city of Idaho Falls, in that no proof was made by the state that any of these ordinances had ever been published or posted as required by law.

All of the above exhibits were signed and approved by a person who purported to be mayor of the city of Idaho Falls, and countersigned by a person who purported to be the clerk of the city, and copies thereof were certified by a person purporting to be the legal keeper thereof, to wit, the clerk, who affixed thereto the corporate seal.

It is insisted that the state should have gone further and proved the publication of each of the ordinances. There appears to be no rule upon this point which can be said to be of uniform application. (McQuillin on Municipal Corporations, sec. 864.) The supreme court of California has held that proof of the existence and identity of the ordinance offered is all that is required until some showing has been made that there was irregularity in its enactment (*Merced County v. Fleming,* 111 Cal. 46, 43 Pac. 392), and that the certificate of the city clerk under his official seal is *prima facie* evidence of the passage of an ordinance and renders it

admissible in evidence. (*People v. Baldwin,* 117 Cal. 244, 49 Pac. 186.) Independent of the decisions, however, the rule in this state is fixed by statute. Rev. Codes, sec. 5977, subdivision 5, provides: "Acts of a municipal corporation of this state . . . . may be proved by a copy, certified by the legal keeper thereof, or by a printed book, published by the authority of such corporation." Under this statute, proof of publication of ordinances as a prerequisite to their intro- duction in evidence is not required.

There is no merit in the contention that State's Exhibits "C," "F" and "G" were not certified by the legal keeper thereof, "for the reason that the certificates were made by some person who some ten or twelve years prior to the date the same were offered in evidence claimed or pretended to have been city clerk of the city of Idaho Falls, without any proof on the part of the state of any kind or nature that the said parties attempting to certify the said ordinances ever had been clerk of the city of Idaho Falls." The statute above quoted does not provide that a municipal ordinance, in order to be admissible in evidence, must be certified by the *then acting* city clerk. The rule is that where provision is made by statute for proving a municipal ordinance by a copy thereof, certified by the proper city official, a certifi- cate in the form prescribed by law and signed by a person assuming to act in such official capacity is *prima facie* evi- dence of the genuineness of the ordinance, entitling it to be admitted in evidence without other proof. (*Milburn v. State,* 1 Md. 1; *Prather v. Johnson,* 3 Har. & J. (Md.) 487; *Willard v. Pike,* 59 Vt. 202, 9 Atl. 907; *State v. Potter,* 52 Vt. 33; *Benedict v. Heineberg,* 43 Vt. 231; *Lemington v. Blodgett,* 37 Vt. 210; *Hubbard v. Dewey,* 2 Aik. (Vt.) 312; *Usher's Heirs v. Pride,* 15 Gratt. (Va.) 190.) We think the correct rule is as set forth in *Mott v. Smith,* 16 Cal. 533–554, where the court said:

" . . . . The practice is to take a certificate which appears on its face to be in conformity with the statutes, as proof of its own genuineness. It need only be produced. There is no need of extrinsic proof, such as showing by whom it was

made, any more than of a notary's certificate when received under the commercial or civil law (Chitty on Bills, [Am. ed. 1839], 642a; 2 Dom., tit. 1, sec. 1, pl. 29). . . . . Accordingly, where the certificate describes the proper officer, acting in the proper place, it is taken as proof both of his character and local jurisdiction. . . . . . '*Prima facie* the officer is to be presumed, *de facto* and *de jure,* such as he is described to be.' "

When, in compliance with the statute, an ordinance has been duly certified by the proper custodian thereof, so as to entitle it to be admitted at the time of certification, its admissibility in evidence is not disturbed by the lapse of time or by the passing out of the person then in office and the appointment of a new custodian.

The sixth assignment of error raises the point that the court erred in denying appellant's motion to require respondent to elect on which of several alleged embezzlements the state would rely, i. e., the alleged embezzlement of March, April, May (of 1914), August, September, or October (of 1915). The indictment charged but the one offense, to wit, the embezzlement of $8,430.78. Appellant insists that the testimony introduced by the state showed that if any offense was committed, six separate and distinct offenses were committed on the dates mentioned. If this is true, the charge should have been limited to one transaction.

To sustain his contention, counsel for appellant cites and relies largely upon the case of *Edelhoff v. State,* 5 Wyo. 19, 36 Pac. 627, wherein it was held that a clerk could not be convicted for embezzlement of $151.75, when it was shown that his offense consisted of eighteen distinct embezzlements of $8.75. The supreme court of Wyoming, in its opinion, referring to the case of *Brown v. State,* 18 Ohio St. 496, says:

"The evidence in that case showed a continuous series of conversion of money, . . . . and it was held sufficient to support a finding by the jury of the aggregate sum as the amount of a single embezzlement, which the court held 'it was in fact and in law,' and very properly said: 'Were it otherwise, the particular conversion could never be ascertained or proven.'

. . . . In the case of *State v. Noland,* 111 Mo. 473, 19 S. W. 715, 722, a public official was charged with the embezzlement of public funds; and, although three different sums were traced into the hands of the defaulting officer, the court said that, for aught that the record disclosed, he converted it all at one time.''

It is evident from the above that the supreme court of Wyoming recognized that the rule laid down in *Edelhoff v. State, supra,* was not applicable where the separate acts of embezzlement were not susceptible of direct proof, as where the crime was committed by virtue of the confidential relation existing between the municipality and the city clerk, and consisted of many acts done at different times, and in pursuance of a fixed purpose.

In *Ker v. People,* 110 Ill. 627, 645, 51 Am. Rep. 706, the court said:

''One element that enters into the statutory definition of embezzlement is the fiduciary or confidential relation. Such relations afford the amplest opportunity to misappropriate money, funds and securities, and often present great difficulty in proving exactly when and how it was done. This is especially true with. regard to clerks and confidential agents in banks, or other corporations or firms doing a large business, and who are intrusted, in whole or in part, with the care or custody of funds, securities and property belonging to banks or other corporations, or to a copartnership. It is difficult, in such cases, if at all possible, to prove with certainty when or how the embezzlement was effected. It is, of course, done with a view to avoid detection, and the confidential relations existing ward off suspicion. Embezzlement may, and most often does, consist of many acts done in a series of years; and the fact at last disclosed, that the employer's money and funds are embezzled, is the crime against which the statute is leveled.''

In *State v. Noland,* 111 Mo. 473, 19 S. W. 715, at p. 722, the court said:

''Embezzlement is necessarily peculiar in some of its features, and particularly so when a public officer obtains funds

by virtue of his office. Unlike the ordinary clerk, he has no one to watch over his manner of doing business. Manifestly if the rigid rules of the common law, requiring the state to show exactly when he received certain moneys, the character of the money, . . . . and exactly how he effected the misappropriation, were to obtain, then the statute would be a dead letter. Accordingly the courts of this country, with great unanimity, have not considered the common-law precedents as controlling under similar statutes, and while requiring a substantial compliance with the statutory requirements, and having due regard to the constitutional guaranties, they have construed this law liberally. The fiduciary relation enables the officer to convert funds and securities to his own use, and at the same time renders it almost impossible for the state, in advance, to charge when and how it was done. Embezzlement often consists of a series of acts, done at different times, but with a common design; and ultimately the one fact appears that there is a shortage. All that can be said is that there is a certain deficit; the public funds have been embezzled to a certain amount. . . . . The circuit court regarded it as one transaction, one in effect and practical result. The attorney general prosecuted on this theory; the court instructed on this view; and the jury found their verdict on this aspect of the case. It was largely a question of fact.''

In the instant case, it is insisted that since it appears that in the report made by appellant to the city treasurer for the months of March, April and May, 1914, and August, September and October, 1915, appellant did not report or turn in to the city treasurer all the moneys received by him, if appellant was guilty of the crime of embezzlement, six separate and distinct acts of embezzlement were committed. The evidence disclosed a total amount of $8,602.83, collected from various sources and from numerous individuals by the appellant, while acting as city clerk, which he failed to account for, and which covered the entire time charged in the indictment. The evidence failed to disclose the embezzlement of separate amounts at any stated time; but did show the appropriation of the entire amount by appellant, who systemat-

ically instituted a continuous series of withholding a portion of the city's moneys that were collected by him by virtue of his office. The embezzlement of the separate amounts was not susceptible of direct proof, but the aggregate amount systematically withheld by appellant was established by the proof.

An analogous case is that of *Willis v. State,* 134 Ala. 429, 33 So. 226. In that case, the defendant, an express agent, committed a series of acts of embezzlement between January 1, 1898, and April, 1900. These acts were proven by the daily records of the express company. It was contended that because the aggregate amount appropriated was capable of proof by the records in smaller amounts monthly, the state should be compelled to elect on which smaller amount it would rely. The court, in addressing itself to this question, used the following language:

"The next important question raised upon the record is whether the prosecution could be compelled to elect to prosecute for one particular act of embezzlement. The evidence shows that the defendant was station agent of the railway company, and as such had full charge and control of its business at that station, was the custodian of all moneys arising out of the sale of tickets, collected all freight and express charges, made disbursements, and kept the books. Furthermore, the evidence tended to show that by a system of false entries upon the books and other dubious practices, he endeavored to conceal his withholding of small amounts of money which came into his possession from time to time, by virtue of his employment; and, by a system of falsification, he managed to conceal for a considerable length of time his acts of conversion with his employer's money. The tendency of the evidence strongly supports the theory that the defendant systematically instituted a continuous series of withholding of his principal's money for the purpose of acquiring for his own use, ultimately, a large sum. Where this is the case the doctrine of election does not apply, since the series of acts would constitute but one offense and each separate act would not be a separate and distinct offense."

See, also, *State v. Dale,* 8 Or. 229; *State v. Reinhart,* 26
Or. 466–481, 38 Pac. 822–827; *Chamberlain v. State,* 80 Neb.
812, 115 N. W. 555–557.

Appellant's assignments numbered 7 to 14, inclusive, re-
late to the admission of State's Exhibits "T," "D" and
"F," and to the giving or refusal to give certain instruc-
tions, the contention being that the court should have advised
the jury to acquit the appellant by reason of the fact that the
ordinances under which he had assumed to collect moneys
were not valid in that none of said purported ordinances had
ever been passed by the city of Idaho Falls, as required by
law, and that he had acted, therefore, not in his capacity as
city clerk, but as agent of the city; and that the evidence,
therefore, failed to justify the verdict and judgment that
appellant in his capacity as city clerk had embezzled the
funds as alleged.

Rev. Codes, sec. 2256, provides that: "The treasurer of
each city and village shall be the custodian of all money
belonging to the corporation; . . . . "

Rev. Codes, sec. 2277, is as follows: "The city or village
clerk shall have the custody of all laws and ordinances, . . . .
He shall also perform such other duties as may be required
by the ordinances of the city."

From a consideration of the two sections quoted above, it
is apparent that the city of Idaho Falls had authority in law
to add to the duties of the city clerk, which it attempted to
do by Ordinances 50–A, 78 and 94, State's Exhibits "T,"
"D" and "F," respectively, in the following language:

### Ordinance 50–A.

"Section 1.   It shall be the duty of the City Clerk to per-
form such duties as are required by law and it shall be his
further duty to collect all water rentals and electric light
rentals due the city, and keep an account of the same, and
make a monthly report, and turn all monies collected by him
over to the City Treasurer."

### Ordinance 78.

"Section 22.   The City Clerk shall furnish to each prop-
erty owner, landlord, or his agent, on the first of each month,

a statement of the amount due for water for that month, and if any person neglects to pay his water rent by the tenth of the month, or shall fail or refuse to pay the water rates charged against him at the office of the City Clerk, the said clerk shall notify the Supt. of water works, who shall cause the water to be turned off from the premises of such delinquent. . . . . "

Ordinance 94.

"Section 2. At the time of issuing any such license, the city clerk shall countersign the same and affix the seal of the city thereto, and before the delivery thereof shall collect the lawful amount of such license in cash.

"Section 3. The city clerk shall settle with the City Treasurer on the first day of each month for all licenses previously issued and shall report the same to the Council at the next regular meeting."

The above ordinances, providing for the collection, receipt and turning over of such funds by the city clerk to the city treasurer, at stated intervals, are not in conflict with the provisions of Rev. Codes, secs. 2256 and 2277, *supra,* and are lawful subjects for enactment by the city council. Granting, then, that these ordinances were not legally passed by the council, they were brought in evidence, certified by the lawful custodian thereof; and under them the appellant, by virtue of the fact that he was city clerk, had assumed to act on behalf of the city of Idaho Falls, in collecting the moneys which said purported ordinances sought to authorize him to collect; and, having collected a large sum by virtue of his office and by virtue of the ordinances mentioned, having remitted to the city treasurer the greater part thereof as required by said ordinances, and having withheld and converted to his own use $8,602.83 of the money so collected, he cannot be heard to say that the ordinances were of no legal effect, and that he received the sums in question in a private capacity as a mere agent of the city.

The instruction complained of, bearing expressly upon this point, was given by the court in the following language:

"No. 16. Where one assumes to act as an officer of a municipal corporation, he may not, when challenged for those acts, deny that he was acting in an official capacity.

"He is estopped, not merely as against his assumed principal, but also as against the State."

Under the facts and circumstances in evidence, this instruction correctly stated the law, and the principle therein announced is supported by the great weight of authority. (Bishop, Criminal Law, 3d ed., sec. 367; 2 Wharton, Criminal Law, 7th ed., sec. 1920; *State v. Spaulding,* 24 Kan. 1; *State v. Patterson,* 66 Kan. 447, 71 Pac. 860; *Ex parte Hedley,* 31 Cal. 108; *People v. Robertson,* 6 Cal. App. 514, 92 Pac. 498; *People v. Royce,* 106 Cal. 173, 37 Pac. 630, 39 Pac. 524; *People v. Leonard,* 106 Cal. 302, 39 Pac. 617; *People v. Treadwell,* 69 Cal. 226, 10 Pac. 502; *People v. Gallagher,* 100 Cal. 466, 35 Pac. 80; *State v. Stone,* 40 Iowa, 547; *State v. District Court,* 31 Mont. 428, 3 Ann. Cas. 841, and note, 78 Pac. 769; *Ex parte Ricord,* 11 Nev. 287; note to *Calkins v. State,* 18 Ohio St. 366, 98 Am. Dec. 121, at 137; *State v. Pohlmeyer,* 59 Ohio St. 491, at 496, 52 N. E. 1027; *State v. Heath,* 8 Mo. App. 99; *State v. Silva,* 130 Mo. 440, at 461, 32 S. W. 1007; *Newman v. People,* 23 Colo. 300, 47 Pac. 278; *Leonard v. State,* 7 Tex. App. 417; *State v. Costin,* 89 N. C. 511, at 515; *State v. O'Brien,* 94 Tenn. 79, 28 S. W. 311, 26 L. R. A. 252; note to *Hartnett v. State* (Tex. Cr.), 23 L. R. A., N. S., 761, and note to *Smith v. State* (Tex. Cr.), 17 L. R. A., N. S., 531.

Bishop, in sec. 367, *supra,* says: "In reason, whenever a man claims to be a servant while getting into his possession by force of his claim the property to be embezzled, he should be held to be such on his trial for the embezzlement."

The reasoning is equally applicable here, that where a man assumes to collect and receive moneys for the city, by virtue of his office as city clerk, and by virtue of a purported city ordinance directing the city clerk to collect and receive such moneys, he should, on trial for embezzlement of a portion of such funds, be held to be such city clerk, and should not

be heard to question the validity of the ordinances under which he assumed to act.

In the case of *State v. Spaulding, supra,* which is recognized as a leading case upon the question of estoppel, the defendant had assumed authority to act, and acted under color of authority, in the collection of moneys belonging to a municipality, and sought to avoid conviction upon the ground that there was no city ordinance which authorized him to collect license money. The court, in an opinion written by Brewer, J., afterwards a member of the supreme court of the United States, said:

"Defendant was the city clerk; the money which he is charged with embezzling came from two sources—licenses, and from what is known as the 'dog tax.' Under the city ordinances, applicants for licenses were required to pay the license fee to the city treasurer. . . . . The city clerk prepared and attested the license, which was signed by the mayor, but he had nothing to do with the receipt of the money. The provisions concerning the dog tax were different, for as to that the ordinance in terms authorized the clerk to receive the tax, and thereafter pay it over to the city treasurer. Unquestionably this money, while in his hands, was city money, and an embezzlement of it was an embezzlement of city funds. . . . .

"Upon these facts (and others recited in the opinion not pertinent here), defendant asked the court to instruct the jury that no conviction could be had for embezzling this license money, inasmuch as the charge was of embezzling money of the city, and this money never having passed into the hands of the treasurer, was still the money of the various licensees, or at any rate was not the money of the city."

The court refused to instruct the jury as requested, but, on the other hand, charged in substance that the city was an incorporation and might employ agents without providing therefor by ordinance and that if one with the assent of the mayor and council, acting in the capacity of agent, clerk, servant or bailee of the city, should receive moneys belonging to it and embezzles them, he might be convicted although the

ordinance provided that all dues of the city should be payable to the city treasurer.

In the instant case, the appellant was acting under ordinances, treated as valid by the officers of the municipality and by himself in the collection of the moneys which he is charged with embezzling, and, as was said in the case of *State v. Spaulding, supra:*

"A man may not say: 'I have the right to receive money,' and receive it, and then, when challenged for its receipt or embezzlement, avoid liability by saying, 'I had no right to receive it.' He has voluntarily assumed a position, the responsibilities of which he may not avoid. The defendant may not say he holds this money simply for the licensees, because he himself has issued the licenses. . . . . That by issuing (the licenses), he conclusively, so far as he was concerned, affirmed that the money he had received and was holding was city money. The law of estoppel binds him, whether it binds anyone else or not, and is equally potent in a criminal as well as a civil action. . . . . It would be the height of legal absurdity to permit the chief actor, the real wrongdoer, to dispute the authority he has assumed and avoid liability for a crime which his own assumption of authority has alone given him power to commit. Reference is made to 2 Wharton on Crim. Law (7th ed.), section 1920, in which the author says that, 'While the reason of the thing requires that the money embezzled should have been received by the defendant within the orbit of his employment, yet where he succeeds in getting money on the basis of such employment from third parties, and when there is a legal duty resting on him to pay over such moneys to his employers, then the embezzlement of such money is within the statute.' "

In this case the purported ordinances made it the duty of the city clerk to issue his receipt as such clerk to the patrons of the electric light and water departments, and licensees, when the money was paid to the city. He received this money as the money of the city, which is conclusively shown against him by issuing receipts therefor, which was an affirmance by him that he had authority as clerk of the city to

receive the moneys for the city. He understood that he was to receive this money and to receipt therefor, and that it was paid to him because he was city clerk. He cannot, therefore, be heard to say that the ordinances under which he received this money were not legally passed, nor to urge in his defense that he received the city's money in a mere private capacity as agent and not in his official capacity as city clerk.

It is apparent from the foregoing authorities that appellant's contention that he should have been indicted under Rev. Codes, sec. 7068, instead of under Rev. Codes, sec. 7066, is without merit. Furthermore, the language of the section under which appellant was indicted precludes any such interpretation as appellant seeks to give it. It is as follows:

"Sec. 7066. Every officer of this state, or of any county, city, or other municipal corporation or subdivision thereof, and every deputy, clerk, or servant of any such officer, and every officer, director, trustee, clerk, servant, or agent of any association, society, or corporation, (public or private) who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

Under the language of this section, it is immaterial whether the defendant is an officer, or merely a clerk or servant of an officer, or whether he is merely a clerk, servant or agent of the municipality. The statute applies to all such alike, and it matters not in this case, under the foregoing section, whether appellant desires to be regarded as an officer or as an agent. If he embezzles money belonging to the municipality, which comes into his possession while acting in the capacity either of officer or of agent, the statute makes him guilty of embezzlement. The language of the statute is broad and seems to have been, with wise forethought, expressly designed to cover all cases of embezzlement of public funds by public servants, and independent of the authorities above reviewed stands as a complete refutation and answer to

appellant's contention. We do not wish to be understood as
saying that under this section a defendant could be charged
as an officer and convicted as a clerk or agent, but that appel-
lant was properly indicted under this section, and that even
though the facts had been such as to make it necessary to
indict him as an agent of the city and not as clerk, the indict-
ment should still be drawn under this section. The deter-
mining feature of the case is that the moneys embezzled
belonged to the city, that appellant knew that fact and
assumed to collect the moneys for and on behalf of the city,
in his official capacity as city clerk, and whether or not the
ordinances were void, they were admissible in evidence as
circumstances tending to establish this feature of the case.

The judgment is affirmed.

RICE, J., Concurring.—I concur in the conclusion reached
that the judgment of conviction must be affirmed.

It may be true that estoppel, as that term is ordinarily
used, cannot be invoked against a defendant in a criminal
case. But in this case the appellant assigned as error the
refusal of the trial court to strike Exhibits "D," "T" and
"F," which were purported ordinances of the city of Idaho
Falls, for the reason that the evidence showed that these
ordinances were never published or posted as required by
law. I think the court properly refused to strike these ex-
hibits. They were competent to show that the appellant,
while acting as city clerk, collected funds belonging to the
city with the consent of the municipality, and that therefore,
when collected by appellant, they became the property of the
city. There is no evidence in the record to suggest that
appellant, while collecting the funds of the city, was acting
merely as an agent of the city, or otherwise than in his offi-
cial capacity as city clerk. The funds came into his posses-
sion by virtue of his office. In my opinion, independently
of any statute or ordinance, he was under a legal duty, as
city clerk, to pay the funds collected by him to the legal custo-
dian of the funds. I think, therefore, the appellant was

properly charged and convicted of embezzlement of the public funds of the city of Idaho Falls as city clerk.

The court properly declined to require the state to elect as to which act of embezzlement it would rely upon, because the evidence did not show that there were separate acts of embezzlement. The indictment charged but a single offense. I think it is not a question of whether the embezzlement of separate and distinct amounts was susceptible of direct proof, but it is a question of whether the evidence did prove that there were separate and distinct embezzlements of separate amounts. Until the evidence disclosed such a state of facts the state was not required to elect, but the issue properly went to the jury upon the indictment itself.

MORGAN, J., Dissenting.—Estoppel has been defined as "a preclusion in law which prevents a man alleging or denying a fact in consequence of his own act, allegation or denial of a contrary tenor." (16 Cyc. 679, note 1.) The application of the doctrine of estoppel in criminal cases is of doubtful origin and worse than doubtful soundness. To attempt to apply it to this case is to violate Rev. Codes, sec. 7758, which provides that the plea of not guilty puts in issue every material allegation of the indictment, and the well-known principle of law that the burden is on the state to *prove* every fact and circumstance which is essential to the guilt of the accused. (12 Cyc. 379.)

The application of that spurious doctrine here means that not only was appellant precluded from showing the law did not make it his duty, as charged, to receive the money and pay it over to the city, but relieved the state of the burden of proving he received it, as clerk, by virtue of his office, and thus violated an official trust when he misappropriated it.

No case can be found where a court has followed this so-called doctrine of estoppel in criminal cases to the extent of holding that an accused can be prevented from asserting what the law is, or that his act did not constitute a violation of the law he was accused of having violated. That is the result of its application to this case and means that because

appellant, when he received the money, assumed to act as clerk he is precluded from showing, or asserting that, *as a matter of law*, no such duty rested upon the incumbent of that office and that when he appropriated it to his own use no official trust was violated.

Reduced to its final analysis, estoppel in criminal cases amounts to this: Although accused is not guilty of the crime charged, his misconduct has been such as to make proof of his guilt unnecessary in order to bring about his conviction.

The indictment in this case charges, in substance, that appellant was an officer of the city of Idaho Falls, to wit, city clerk, and that *by virtue of his trust as such officer* there came into his possession and under his control $8,430.78, the property of the city, and that while said money was so in his possession and under his control, *by virtue of his said trust,* he appropriated it to his own use, *not in the due and lawful execution of his said trust.*

The indictment charges a violation of Rev. Codes, sec. 7066, by appellant, as an officer, to wit, clerk of Idaho Falls. That section, so far as it applies to this case, provides: "Every officer of . . . . any city . . . . and every . . . . agent of any . . . . corporation (public or private) who fraudulently appropriates to any use or purpose *not in the due and lawful execution of his trust,* any property which he has in his possession or under his control *by virtue of his trust* . . . . is guilty of embezzlement."

The gravamen of the offense is the misappropriation of property in violation of a trust and the crime may be committed, so far as this case is concerned, by either one of two classes of persons: 1. Officers of cities; 2. Agents of corporations.

The evidence tends to show that appellant came into possession of money of Idaho Falls and that he appropriated it to his own use. If he did this as an officer of the city he is guilty of a violation of the above-quoted statute. If he did it as an agent of that municipal corporation, he is guilty of a violation of the same statute. Whether he acted as an officer or as an agent becomes material because of the allegation

in the indictment specifically accusing him of having acted as an officer, to wit, clerk. This designation of the capacity in which he acted made it necessary for the state to establish that, in misappropriating the funds of the city, appellant violated a duty which he, as clerk, owed to it.

Had the evidence shown that, instead of being clerk, appellant was mayor of Idaho Falls and that, in the latter official capacity, he received and misappropriated the money, it would hardly be urged that the proof would sustain this indictment although a mayor may commit the crime mentioned in the statute. It is equally clear that if his misconduct did not constitute a breach of a duty which *the clerk* owed to the city, but that his misappropriation of the funds of the municipality was in violation of the trust which it reposed in him *as its agent,* there is a fatal variance between allegation and proof.

Agency may be, and sometimes is, created by the conduct of the parties. Official duties are imposed only by law. (29 Cyc. 1431; *Moore v. State,* 53 Neb. 831, 74 N. W. 319; *Warswick v. State,* 36 Tex. Cr. 63, 35 S. W. 386; *State v. Bolin,* 110 Mo. 209, 19 S. W. 650; *State v. Meyers,* 56 Ohio St. 340, 47 N. E. 138; *People v. Shearer,* 143 Cal. 66, 76 Pac. 813; *Hartnett v. State,* 56 Tex. Cr. 281, 133 Am. St. 971, 23 L. R. A., N. S., 761, 119 S. W. 855; *Dickey v. State,* 65 Tex. Cr. 374, 144 S. W. 271.)

There is no statute in Idaho making it the duty of the city clerk to collect, or pay over, this money, and the ordinances by which it was sought to impose those duties upon that officer were held, by the trial court, to be void, so that the state failed to establish the following indispensable elements of the crime charged: That the money in question was in appellant's "possession or under his control by virtue of his trust" as city clerk, and that while it was so held in his possession he appropriated it to "a use or purpose not in the due and lawful execution of said trust."

It appears that a custom was established, probably pursuant to the ordinances which were held to be void, as above noted, whereby appellant collected certain money belonging

to the city and turned portions of it over to the treasurer. While void ordinances cannot serve to impose an official duty upon the clerk, the custom which was established and the conduct of the parties in following it made appellant the city's agent, and his misappropriation of the money in question constituted a breach of his trust, as such, and a violation of Rev. Codes, sec. 7066. He was not accused of that, but was charged with having, as city clerk, violated a duty which that officer, as such, was not shown to owe to the municipality. He was not accused of the crime of which the evidence tended to show him guilty and, in the absence of a valid ordinance making it his official duty, as city clerk, to pay over the funds in question, he could not be guilty of the one of which he was accused.