### HOSMER H. HENDEE v. STATE OF NEBRASKA.

FILED NOVEMBER 20, 1907. No. 15,130.

1. **Embezzlement: INFORMATION.** The estate of a deceased person, pending administration, is a legal entity; and, in charging a violation of section 121 of the criminal code, it is sufficient, as to the matter of ownership, to allege that the money or property embezzled belonged to such an estate.

2. ———: ———. An information based on the provisions of the section above named, which charges, in the language of the statute, that the property in question came into the possession of the defendant "by virtue or under color of his relation as an officer," is not void for duplicity, and is sufficient in that respect to sustain a conviction.

3. ———: ———. In charging the embezzlement of a certificate of deposit belonging to an estate, it is sufficient to describe the instrument as it appeared at the time it came into the possession of the accused, and subsequent indorsements, procured by him, need not be set forth in the information.

4. ———: EVIDENCE. Bill of exceptions examined, and evidence found sufficient to sustain the conviction.

ERROR to the district court for Saline county: LESLIE G. HURD, JUDGE. *Affirmed.*

*Grimm & Son* and *A. J. Sawyer,* for plaintiff in error.

*W. T. Thompson, Attorney General,* and *Grant G. Martin, contra.*

BARNES, J.

The defendant below, Hosmer H. Hendee, was convicted of the crime of embezzlement, and brings the case here for review.

The prosecution was based on an alleged violation of section 121 of the criminal code, which reads in part as follows: "If any * * * officer elected or appointed to any office of public trust in the state * * * shall embezzle or convert to his or her own use any money, property, rights in action, or other valuable security or effects whatever,

Hendee v. State.

belonging to any individual, or company, or association, that shall come into his or her possession by virtue or under color of his or her relation as officer, * * * every such person so offending shall be punished in the manner provided by law for feloniously stealing property of the value of the article so embezzled, taken, or secreted, or of the value of any sum of money payable or due upon any right in action so embezzled." The information contained two counts. It was alleged in the first count, in substance, that the defendant was the duly elected, qualified, and acting county judge of Saline county, and was an officer elected to an office of public trust in the state of Nebraska; that by virtue or under color of his relation as such officer there came into his possession certain money, of the value of $52.85, belonging to the estate of one George Smith, deceased; that he fraudulently, wilfully, unlawfully, intentionally and feloniously embezzled and converted the same to his own use. In the second count it was charged in the same form and manner that there came into the possession of the defendant one certain certificate of deposit issued by the First National Bank of Friend, Nebraska, for the sum of $3,300, with interest thereon at the rate of 2 per cent. per annum, of the value of $3,333, belonging to the estate of George Smith, deceased, and being the property of said estate, and that the defendant did embezzle and convert the same to his own use. It appears that a motion to quash the information and both counts thereof was filed and overruled; that the defendant demurred to both counts of said information, and his demurrer was also overruled, and these rulings are assigned as error. The demurrer fairly raises two important questions, which will be considered in the order in which they were presented.

It is first contended that the charge of ownership of the money and certificate of deposit in question, which is alleged to be in the estate of George Smith, deceased, renders the information fatally defective, in that it fails to

state facts sufficient to charge the defendant with the commission of any crime whatsoever. It is claimed that an estate of a deceased person is not an individual within the meaning of the statute above quoted, and the ownership of the money and property should have been alleged to be in the administrator of the estate. In support of this contention defendant cites *State v. Mims,* 26 Minn. 191. We find that this question did not arise and was not decided either directly or indirectly in that case. We do find, however, in *People v. Hall,* 19 Cal. 425, also cited by counsel, that the question was before the supreme court of California, and it was there said: "This was a case for altering the brand of a horse with intent to steal it. The indictment charges the property as that of an estate. This is insufficient. The charge should be of altering the brand of the animal as that of a particular individual, or that the owner of the animal was unknown. For this error the judgment must be reversed and the cause remanded." The foregoing is the opinion of the court in full, and it will be observed that no reasons are given for the holding, and no authorities cited to support it. Some of the text-books, following that case, announce the rule therein stated. Since the adoption of the code, however, the supreme court of California has disregarded that decision. In *People v. Smith,* 112 Cal. 333, 44 Pac. 663, it was alleged in the complaint, for grand larceny, that the property in question belonged to the estate of W. C. Elledge, deceased, while in the information it was alleged that it belonged to the executor and executrix of the estate. The defendant claimed a variance. The court held that there was no variance, and said: "In each the offense was described with sufficient certainty to identify the act, and the alleged ownership was in effect the same, namely, in the estate of W. C. Elledge, deceased." This decision was followed and approved in *People v. Prather,* 120 Cal. 660, 53 Pac. 259. It is but fair to say, however, that section 956 of the criminal code of California provides: "When an offense involved the commission of, or an attempt to commit, a

private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material." And, while those decisions may be said to be authorized by the section of the code above quoted, yet it was said in *People v. Leong Qoung,* 60 Cal. 107, which was a case of grand larceny: "The name of the owner of property stolen is not a material part of the offense charged. It is only required to identify the transaction, so that the defendant, by proper plea, may protect himself against another prosecution for the same offense." Again, in *Billings v. State,* 107 Ind. 54, it was said: "To our minds, it seems reasonable that the estate of a decedent should be regarded as an artificial person. It is the creation of law for the purpose of enabling a disposition of the assets to be properly made, and, although natural persons, as heirs, devisees, or creditors, have an interest in the property, the artificial creature is a distinct legal entity. The interest which natural persons have in it is not complete until there has been a due administration, and one who forges the name of the decedent to an instrument, purporting to be a promissory note, must be regarded as having intended to defraud the estate of the decedent and not the natural persons having diverse interests in it, since he cannot be presumed to have known who those persons were or what was the nature of their respective interests. The fraudulent intent is against the artificial person, the estate, and not the natural persons who have direct or contingent interests in it." So it would seem from the foregoing that the courts now hold that it is proper to allege ownership of property in the estate of a deceased person. The allegation of ownership was sufficient to identify the crime and advise the defendant of the charge against him. Section 412 of the criminal code provides, among other things: "No indictment shall be deemed invalid, * * * when there is sufficient matter alleged to indicate the crime or person charged; * * * nor for any other defect or imperfection which does not tend to the prejudice of the

substantial rights of the defendant upon the merits." We are of opinion that it is sufficient in charging the embezzlement of property under the provisions of section 121 of the criminal code, belonging to the estate of a deceased person, to allege the ownership either in the estate or in the administrator of the estate, if there be one.

The second point raised by the demurrer, as well as by the motion to quash the information, is based on the allegation that the money and certificate of deposit in question came into the possession of the defendant "by virtue or under color of his relation as such officer, to wit, the county judge of Saline county, Nebraska." It is contended that both counts of the information are duplicitous, and are too vague and indefinite to apprise the defendant of the crime with which he is sought to be charged. The reason for the rule invoked by the defendant is that in case of an acquittal or conviction the judgment may be pleaded in bar to another prosecution based on the same facts. To charge the commission of an offense in the disjunctive form has always been condemned by the rules of criminal pleading and by the courts, and it is insisted in this case that, if the information is sustained, our decision will form a precedent which will authorize the state to charge a defendant "with having stolen a horse or a cow or a sheep from the estate of John Doe, deceased, who in his lifetime was the owner of three quadrupeds." In support of this contention counsel cites *Clifford v. State*, 29 Wis. 327. In that case, the prosecution was based on a complaint which charged that the defendant did "vend, sell, deal *or* traffic in, and give away, for the purpose of evading the act, spirituous, ardent *or* intoxicating liquors *or* intoxicating drinks, viz., rum, gin, brandy, whiskey, ale and beer *or* wine," and it was held that disjunctive allegations in such cases are not allowed. It was further held that, where a statute makes it an offense to vend, sell, deal or traffic in certain liquors, the word "or," being used to connect synonymous expressions, may properly be retained, and the offense charged in the words of the statute. It

was said in the opinion: "Where a statute makes it a crime to do this or that, or the other, mentioning several things disjunctively, all of which are punished alike, it is a general rule that the whole may be charged *conjunctively* in a single count, as constituting but a single offense. * * * But *disjunctive* allegations in such cases are not allowed; the only exception being where the word 'or' is used in the sense of 'to wit,' that is, in explanation of what precedes, and making it signify the same thing. In the latter instance a complaint or indictment which adopts the words of the statute is well framed. * * * Within this exception would fall the word 'or' in the statute, and in this complaint, as used between the words 'deal' and 'traffic in,' these last words being synonymous, or meaning the same thing."

In the case at bar, the words "by virtue and under color," as applied to the expression "of his or her relation as officer," etc., may be said to mean one and the same thing, to wit, the obtaining of money or property by reason or because of such official relation. The offense with which the defendant was charged is embezzlement, and is punished in the same manner, whether he obtained possession of the money and property embezzled by virtue of his relation as an officer, or under color of such relation. The information follows the language of the statute, and is sufficient to define the offense. It also seems clear that but one crime is charged, and the defendant cannot be prosecuted again for any offense based on the facts alleged in the information and involved in this prosecution. Again, the defendant was sufficiently advised of the nature of the charge to enable him to properly prepare his defense, and, while it would have been sufficient to have alleged that he came into possession of the money and property in question under color of his relation as an officer, yet the charge as made follows the descriptive language of the statute, and such description is violative of none of the defendant's substantial rights. It would further seem that the legislature, by the adoption of section

121, intended to create the distinct and separate offense of embezzlement by an officer, elected or appointed to any office of public trust in this state, of any money or property obtained by him by reason of his relation as such officer, as distinguished from that described in section 124, which defines the offense of embezzlement by a public officer of money or property obtained under and by virtue of his office, and the facts alleged and the evidence produced upon the trial in this case bring it directly within the provisions of the former section. We are aware that the question is a difficult one, and that our holding, at first blush, may seem to trench upon the general rule contended for, yet in fact the charge contained in the information is not duplicitous, and is, in our opinion, sufficient to sustain the conviction.

The foregoing effectively disposes of the rulings on the defendant's motions to quash the information and in arrest of judgment. This brings us to the consideration of defendant's further contention that there is a fatal variance between the certificate of deposit described in the information and that instrument as introduced in evidence by the state, in this, that in the description of the instrument no indorsement was mentioned, while the certificate in evidence appears to have been indorsed by W. W. Stephens, as administrator of the estate of George Smith, deceased. The record discloses that, when the deceased departed this life, he was the owner and in possession of the certificate of deposit in question, which was payable to the order of himself; that the coroner of Saline county, who found it upon his person, took it into his custody, and delivered it unindorsed to the defendant as county judge. The defendant, having obtained possession of the instrument in that condition, retained it from that time forward, and never delivered it to the administrator or accounted for it to the estate of decedent. This was in effect a conversion of it, and the indorsement which he induced the administrator to sign was but a means of converting it into cash, or, in other words, of obtaining its

proceeds in that form. By refusing or failing to deliver the certificate to the administrator and by withholding it from the estate, defendant was guilty of converting it to his own use, and the indorsement was not necessary to consummate the crime charged in the information. So it may be said that the indorsement, not being a part of the certificate when it was issued and when it was obtained by the defendant, was not a necessary part of the information.

Again, defendant is charged with the conversion of the certificate, not the money payable upon it, and a general description of the property thus converted by him was sufficient. The principle announced in *Hess v. State*, 5 Ohio, 5, 22 Am. Dec. 767, seems to be decisive of this matter. In that case the defendant was indicted for selling and delivering to another certain counterfeit bank notes, and for having in his possession, for the purpose of selling, two other counterfeit bank notes purporting to be of the Bank of the United States, issued by one H. Biddle, president, and one McIlvaine, cashier, and payable to order. It was urged that the bills offered to the jury varied from those described in the indictment, and one of the variances relied upon was the omission to describe, in the indictment, the indorsement on one of the notes, and the appearance of the words, "Pay to bearer, Thomas Wilson." The indictment set out the face of the note, but the indorsement was not alluded to at all. The court said: "The indorsement is no more a part of the note than the number, the figures in the margin, or the water-marks, and they need not be set out. Even in an indictment for forging a promissory note, the indorsement need not be set out, for it is no part of the note. * * * Neither shall it be required to set these things forth in an indictment for having them in possession. The variance objected to is not perceived." It was also stated on the oral argument that the certificate of deposit was valueless without the indorsement, and it was no offense to embezzle a thing without value. This contention does not merit serious

consideration. The value of the instrument to the estate unindorsed was the amount of money payable thereon, and it was the estate that was defrauded by its conversion. We are therefore of opinion that the variance complained of was immaterial.

Finally, defendant contends that the evidence does not sustain the verdict. The record discloses, and it was practically admitted on the argument, that the coroner of Saline county took charge of the body of George Smith, deceased, in that county on or about the 14th day of January, 1905; that he found thereon $52.85 in money, the certificate of deposit in question herein, and some other property of no particular value; that he immediately wrote a letter to the defendant as county judge of Saline county, asking his advice as to what should be done with the money and property of the deceased; that in response to the inquiry the defendant wrote a letter to him, from which we quote as follows: "This Mr. George Smith was an old resident of Saline county, and a property owner, and his estate will have to be administered upon by the county court, and whatever property he had should be under the control of the county judge, who will have to see to the administration of his estate, and, in the absence of relatives, is the only one entitled to the possession and control of the property until an administrator is appointed. No inquest being held, the matter stands just the same as if you had not been there at all, except that you are entitled to pay for your trip, and I shall allow it as part of the expenses attending his death. The other claims, whatever they may be, ought to be filed with me, and, as I have jurisdiction over all probate matters in this county, whatever you found should be turned over to me as county judge, you taking my receipt therefor. You have no right, where no inquest was held, to sell any property. I am glad you went over there, and that you took possession of the property, otherwise some one might have robbed the estate. The deceased has relatives living in England. I hope I have made this plain to you. The

statute requires you to deliver the property to those entitled to its care and possession, and, in this instance, there being no relatives living here, the county court is the party entitled to, and whose duty it is to have possession of, the property and see that the estate is properly probated. Yours truly (Signed), Hosmer H. Hendee." On receipt of this letter the coroner called the defendant up by telephone, and made an appointment to meet him at De Witt, in said county, on the 25th of that month. It also appears that a petition for the appointment of an administrator of the estate of the deceased was filed in the county court on the 17th day of January, 1905, and on the 25th the coroner and the defendant met at De Witt, and the money and certificate of deposit were turned over to the defendant, who gave the coroner therefor the following receipt: "Jan. 25, 1905. Rec'd of L. N. Smith, $52.85 cash; one deposit check for $3,300; one watch and bunch of letters, etc.—the property of George Smith, deceased. Hosmer H. Hendee, County Judge." From that time forward the defendant retained possession of the money and certificate of deposit in question, and not only neglected and failed, but also refused, on demand, to turn the same over to the administrator of the estate, who was duly appointed, and qualified on the 22d day of February, following. As soon as the administrator was appointed, the defendant induced him to sign an indorsement on the back of the certificate of deposit, which he had theretofore prepared; that he thereafter obtained the money due thereon from the bank which issued it, and has never in any manner accounted for it to any one.

Basing his contention on the facts above stated, defendant says that he was not entitled to the possession of the money and certificate in question by virtue of his office as county judge; that he obtained possession wrongfully, or under a mutual mistake of law, and, his possession being wrongful, he could not be guilty of the crime of embezzlement. To support this contention he cites *Moore v. State,* 53 Neb. 831, and *State v. Bolin,* 110 Mo. 209, 19 S.

W. 650. In *Moore v. State* the prosecution was based on section 124 of the criminal code, and it was charged in the information that Moore, by virtue of his office as auditor of public accounts, was charged with the collection, safe-keeping, transfer and disbursement of the public money alleged to have been embezzled. It was found, however, that the constitution positively prohibited the auditor from collecting or receiving the money in question, that the accused was not within the class described in that section, and so the prosecution failed. We think it may be safely said of that case that the defendant obtained the money in question under color of his relation as such officer, and, if Moore had been charged with and tried for a violation of the section on which the prosecution in this case is based, we do not see how it would have been possible for him to have escaped from a just punishment for his wrongful acts. In *State v. Bolin, supra,* the defendant, a justice of the peace, was prosecuted for the embezzlement of $200 belonging to the county school fund. It appears that a justice of the peace in Missouri has no jurisdiction to handle public school money, and no control over it by virtue of his office. Every one who dealt with him knew that he had no control of the public school money, and his office gave him no color of right to demand or take it. In this state a county judge is given exclusive jurisdiction over the matter of estates and the administration thereof, both by the constitution and the statutes. Having such jurisdiction, defendant's office gave color to his claim made to the county coroner that he had a right to the possession of the money and property in question. His office of public trust gave him the colorable pretext by which he induced the coroner to deliver it to him. Color, in law, means not the thing itself or the right to the thing, but only an appearance thereof. When the defendant demanded possession of the estate of the deceased from the coroner, he appeared to be acting officially, and professed to be so acting. Thus, by means of his relation as an officer, he obtained possession of the money and

property, which he afterwards embezzled, and it seems clear to us that the undisputed facts of this case bring it fairly within the provisions of the section of the criminal code on which the prosecution was based.

It appearing from the record that the information was sufficient, that the defendant has had a fair and impartial trial, that the evidence fully sustains the verdict, the judgment of the district court is therefore

AFFIRMED.