[No. 15372.   Department One.   January 19, 1920.]

# The State of Washington, *Respondent*, v. J. Harwood Morris, *Appellant*.[1]

CRIMINAL LAW (111)—EVIDENCE—OTHER OFFENSES—INTENT.   In a prosecution of a bank officer for embezzlement of a special deposit, upon an issue as to whether he was authorized to use the funds for a time for his own purposes, testimony that he had previously used part of the same fund without authority is admissible to throw light on his intentions, and is not objectionable as evidence of other crimes.

WITNESSES (126-1)—IMPEACHMENT—COLLATERAL ISSUES.   In a prosecution of a bank officer for embezzlement of a special deposit received from an executor, the executor's account filed in court is inadmissible to impeach the executor's testimony that defendant had requested him to transfer the fund to his personal checking account, as it introduced a matter foreign to the issue.

CRIMINAL LAW (143) — EVIDENCE — CERTIFIED COPIES — ADMISSIBILITY.   In a prosecution of a bank officer for embezzlement of a special deposit part of which was used to pay a judgment against a member of defendant's firm, certified copies of the pleadings in that case are admissible for the purpose of showing that the judgment was against such partner and not against the bank.

SAME (102, 135)—EVIDENCE—RES GESTAE—SELF-SERVING DECLARATIONS.   In a prosecution of a bank officer for embezzlement of a special deposit, which he claimed he was authorized to use for his own purposes for a time, self-serving declarations to that effect, claimed to have been made by him to a third person immediately after receiving the deposit, are inadmissible as part of the res gestae, as it was merely a reference to a past transaction.

EMBEZZLEMENT (14)—EVIDENCE—ADMISSIBILITY.   In a prosecution of a bank officer for the embezzlement of a special deposit which he had collected on a draft from another bank and later obtained on a cashier's check of his bank, the state of the account between the two banks at the date of a subsequent failure is properly excluded as immaterial.

SAME (20)—BANKS AND BANKING (20)—DEPOSITS—OWNERSHIP.   In a prosecution of a bank officer for the embezzlement of a special deposit, it is proper to instruct that upon either a general or special

[1] Reported in 187 Pac. 350.

deposit the money becomes the property of the bank; especially in view of Rem. Code, § 2303, subd. 16, providing that any person shall be deemed an "owner" of any property who has a general or special property in it.

Appeal from a judgment of the superior court for King county, Back, J., entered March 30, 1918, upon a trial and conviction of grand larceny. Affirmed.

*Bausman & Oldham,* for appellant.

*Fred C. Brown* and *Chas. Ethelbert Claypool* (*Frank P. Helsell,* of counsel), for respondent.

MITCHELL, J.—Appellant was convicted of the crime of grand larceny, and has appealed from the judgment and sentence imposed. The charging part of the information is that he, on February 17, 1915, being an agent and officer of the Fremont State Bank, and having under his control, as such agent and officer, the sum of $588.55 in money, the property of the Fremont State Bank, did appropriate the same to the use of himself, Charles E. Remsberg and S. P. Dixon, copartners doing business under the firm name of S. P. Dixon & Company, with intent to defraud the Fremont State Bank.

Appellant was connected with the bank from the date of its incorporation in 1907, and was its cashier in 1915. He was also a member of the real estate firm of S. P. Dixon & Company, a copartnership consisting of Remsberg, Dixon and himself. One of the bank's customers, whose business had been solicited by appellant, in the month of November, 1911, deposited $5,067.20 held by him as executor of an estate. The customer and the appellant were warm friends, and the money was placed in the bank by having appellant call at the customer's office, where a draft in favor of the customer was delivered to appellant for making the deposit. The draft, which never passed through the Fremont

State Bank, was indorsed "Fremont State Bank, Se-attle, by J. Harwood Morris, Cashier," and collected through the Seattle National Bank. On the books of the Fremont State Bank, the deposit was entered by appellant, identified by the depositor's name, and car-ried in what appellant termed or designated "Special Accounts," which also included deposits of others made from time to time that were identified in the same manner. Appellant's defense was that the de-posit was made with the understanding that he could use the money as he wished in his own personal affairs for at least a year, the time required to close the estate the depositor was handling as executor, or until the estate was actually closed. The depositor positively denied there was any such agreement. In February, 1915, it appears that the firm of S. P. Dixon & Com-pany was in need of funds. It undertook to sell a piece of real property belonging to it, the title to which stood in Remsberg's name. It was covered by the lien of an unpaid judgment against Remsberg in the sum of $588.55. The firm being in need of all the money for which the property was sold, it was decided by ap-pellant to pay the judgment out of the trust fund theretofore deposited in the bank by the executor. A cashier's check in favor of the judgment creditor in the sum of $588.55 was issued out of the bank, without its authority, at the direction of appellant, and charged to the executor's item in the special accounts. The check was used to pay the judgment, and the real estate firm never repaid it, nor gave any note or re-ceipt for it, nor was the amount of it charged on the books of the bank against the firm, the credit of which was not good at the bank at that time by special orders of the state bank examiner. This $588.55 transaction constitutes the basis for the present action. The de-

fense presents questions of fact upon which there was, as already stated, a conflict of evidence.

After appellant had testified in chief as to the deposit, how he had handled much of it thereafter, and the terms upon which he claimed the deposit was made, the state was permitted, over objections, in the cross-examination to show that, some time prior to the transaction upon which this action rests, he used a part of this same deposit, without any authority from the bank, to pay a note of $1,560 to one P. G. Laude, owing by the firm of S. P. Dixon & Company. The firm gave the bank no evidence of the use of the money, nor was any charge therefor made on the books of the bank against the firm. It is claimed the admission of the evidence violated the general rule that testimony of other crimes committed is not admissible to prove the instant crime. It is to be noticed that the general rule invoked speaks of testimony of other *crimes*, and it is difficult to understand how the use by the appellant of any or all of the deposit for his own personal benefit can be considered as a crime, or at all irregular, upon his theory and main contention that he was authorized by the depositor to use all of the funds as he saw fit—just as if they were his own. The testimony related to the funds of a single deposit made through the appellant with the bank, the books of which, as to this deposit, were kept by appellant, as all the testimony showed. On the other hand, the state contended there was no agreement with the executor by which appellant could do as he pleased with the funds, and that the money used belonged, at the time of its misappropriation, to the Fremont State Bank, and that the state had the right, under a well recognized exception to the general rule, to introduce the testimony objected to, "not for the purpose of prejudicing the jury against appellant by proving the com-

mission of an independent crime, but to throw light on his intentions in the perpetration of the particular transaction constituting the crime charged.'' The objection was properly overruled. *State v. Pittam,* 32 Wash. 137, 72 Pac. 1042; *State v. Craddick,* 61 Wash. 425, 112 Pac. 491; *State v. Downer,* 68 Wash. 672, 123 Pac. 1073, 43 L. R. A. (N. S.) 774.

In the cross-examination of the executor, appellant attempted to show that he had requested appellant to transfer money from his trust fund account to his personal checking account when the latter was overdrawn. That examination was permitted because it appeared to be material to show just when and how often the bank had paid money to the executor out of his trust fund account. But appellant then attempted to introduce in evidence the account of the executor filed in the matter of the estate in the superior court. Clearly it was an attempt to introduce a side issue in no way helpful in the trial of the present case. If there had been any transfer of the funds from one account to the other, the books and records of the bank should show it. Objection being made to the offer of the executor's account, and the court ascertaining from appellant ''It is offered as to the credibility of the witness,'' the objection was properly sustained.

Certified copies of the complaint, answer of defendant Remsberg, answer of defendant Fremont State Bank, and the judgment in the case of Axelson v. Remsburg and the Fremont State Bank, were admitted in evidence over appellant's objections. This is the judgment already referred to as having been paid to effect the sale of real property belonging to the real estate firm. The documents were offered and allowed only for the purpose of showing the judgment was against Remsberg and not against the bank. Later in the trial the appellant frankly admitted the Axelson

debt was the debt of the real estate firm. There was no error in admitting the proof complained of.

After successful objections to questions put to him, appellant, by his counsel, offered to show that, after appellant received the draft indorsed by the executor in the latter's office, he went into the office of Dr. Winters, on another floor in the same office building, and upon making an appointment for lunch, he thereupon told Dr. Winters, in effect, of his receiving the money from the executor to do with as he saw fit. A proper objection to the offer was sustained by the court, and an examination of the record in this regard shows that what he claimed to have said to the doctor, and the circumstances under which the declaration was made, amounted to nothing more than a reference to a past transaction, lacking in the elements of having emanated instinctively from the act of receiving the deposit for his own bank, so as to make it a part of the *res gestae;* but, on the contrary, it appears to be too clearly open to the suspicion of being self-serving, and was therefore properly excluded.

Subsequent to the taking of the $588.55, the Fremont State Bank failed. At the trial appellant desired to show the condition of the account between that bank and the Seattle National Bank (in which the Fremont bank, by appellant, its cashier, deposited the executor's draft) at the date of the failure of the Fremont bank. An objection to the offer was properly sustained. It was wholly immaterial; for appellant was charged with taking the money of the Fremont State Bank, and he admitted he did use that bank's certified check in the transaction complained of.

There was no error in the instruction given with reference to the inference of intent on the part of appellant the jury was entitled to indulge in upon being

satisfied beyond reasonable doubt that the appellant committed certain enumerated acts.

Lastly, it is urged the court committed error in an instruction to the effect that, when a person makes a deposit in the bank, whether in a general or special account, the money becomes the property of the bank. In this case the instruction as given was correct. In addition, under subdivision 16 of § 2303, Rem. Code, which section gives the rule for construing the terms and provisions of the criminal code, it is provided:

"Any person shall be deemed an 'owner' of any property who has a general or special property in the whole or any part thereof, or lawful possession thereof, either actual or constructive."

Judgment affirmed.

HOLCOMB, C. J., MAIN, MACKINTOSH, and PARKER, JJ., concur.