[No. 18200. Department One. December 6, 1923.]

THE STATE OF WASHINGTON, *Respondent*, v. GLENN EVERITT, *Appellant.*[1]

GAMING (17)—EVIDENCE—SUFFICIENCY. A conviction of conducting, opening or operating a gambling game as owner is sustained by evidence that the accused, as operator of a pool hall and soft drink place, provided and furnished a card room, with arrangements and paraphernalia for conducting a clandestine game, that a large number of persons resorted thereto and played cards, that money was found in front of the dealer and that accused occasionally looked in on the game.

GAMING (16)—CRIMINAL LAW (107)—EVIDENCE—OTHER OFFENSES —COMPETENCY. In a prosecution for opening, conducting or operating a gambling game in a pool hall, in which it appears that accused maintained a separate room with a partition and arrangements for conducting a clandestine game, it is not error, as bearing on why accused had occupied the premises in such condition for years, to receive in evidence a local ordinance forbidding the maintenance in pool halls of interior partitions concealing a view of the interior room from the street.

APPEAL (280)—CONTENTS OF STATEMENT—INSTRUCTIONS. In the absence of the instructions, error cannot be assigned upon the admission of evidence for a limited purpose which the court states will be defined in the instructions.

Appeal from a judgment of the superior court for Pacific county, Hewen, J., entered April 10, 1923, upon a trial and conviction of conducting a gambling game. Affirmed.

[1]Reported in 220 Pac. 797.

*Fred M. Bond,* for appellant.

*John I. O'Phelan* and *A. D. Gillies,* for respondent.

Holcomb, J.—Appellant was convicted under an information charging him with having operated a gambling game commonly known as "Blackjack," as owner thereof.

It is conceded by the state that to be convicted appellant must have opened, conducted and operated the game as owner.

The evidence shows that, at the time in question, he was operating, as sole owner, a pool hall in South Bend, known as the Olympic Club Pool Hall, under a license required for such resorts from the municipality. He had as his only known employee one Nelson. Billiards and pool and games of cards were played in the pool room, where there was also a tobacco stand and a soft drink bar. He had operated the place for a number of years. The place has another small room of about twelve by twelve feet in size adjoining it at the back, with a solid partition between it and the main pool room, with a table therein, and a bell which was attached to the wall near the ceiling, and connected by an electric wire with a bell punch and batteries in the large front room. It was shown without contradiction, that this arrangement had existed ever since appellant took over the place from one Clark eight or ten years before. The bell was in working order, and could be operated from the bar in the large front room by the person in charge there, as was demonstrated by the officers about the time in question.

At the time in question, December 27, 1922, this small room is shown by the testimony for the state to have been occupied by a large number of persons, perhaps twenty, and that a game was being conducted therein, someone dealing the cards, and others calling for cards

at different times in the way in which the game of
Blackjack is played. When the officers entered the
room, one Leonard, who had been dealing the cards,
and held the deck in his hands, had a small sum of
money in front of him, and some more in his hands,
which, upon demand by one of the officers, was given to
him, the total sum being $3.25. The officers had gone to
the rear of the building and one of them was looking
through a window which was slightly open in an ad-
joining room, and through into the room in question,
for about twenty minutes, during which time he
watched the room and heard talk going on. One or
more of the officers saw appellant enter the room a time
or two, look around, and depart into the other room.

Appellant strenuously contends that the court erred
in refusing to grant his motion for a directed verdict;
in refusing to direct a verdict of not guilty and dis-
charging him; in submitting the case to the jury; and
in denying his motion for a new trial. It is insisted
that there is no evidence whatever shown in the case
to convict appellant of the felony charged herein, under
the statute and under our decisions in *State v. Hard-
wick,* 63 Wash. 35, 114 Pac. 873; *State v. Moser,* 94
Wash. 465, 162 Pac. 582; *State v. Kaukos,* 109 Wash.
20, 186 Pac. 269; *State v. Smith,* 58 Wash. 235, 108
Pac. 618, and *State v. Gaasch,* 56 Wash. 381, 105 Pac.
817.

It is true, as was said in the *Gaasch* case, *supra,* that
the object of the felony statute was to suppress gam-
bling resorts and to punish those who maintained them,
and that case rested upon the question of whether
there was a charge of proprietorship.

In the *Moser* case, *supra,* it was shown that appel-
lant furnished the room in which the game was played;
furnished the paraphernalia necessary to carry on the

game; encouraged its customers to engage therein; oversaw the game himself or hired someone to oversee it, and took from the sum wagered on each hand a per centum of the amount wagered.

It is contended that these elements do not exist in this case, and that therefore appellant was not shown *prima facie* to have conducted the game in question.

But from the fact that the arrangements seem to have been made for the purpose of conducting a clandestine game; that the paraphernalia was furnished therefor; that a large number of persons resorted to a very small room to engage therein; that some money was found in front of the person who was dealing the cards, and that appellant occasionally looked in upon the game, the inference might justly be deduced by the jury that appellant was the owner and proprietor of the game, and the dealer his operating agent. While it is true that the evidence is slight and is contradicted, we think it is sufficient to take the case to the jury. Even though a conviction of felony in such a case may seem harsh, we have no right to invade the province of the jury when there is any evidence and circumstances from which the guilt of the accused might be fairly inferred. *State v. Ripley,* 32 Wash. 182, 72 Pac. 1036; *State v. Cherry Point Fish Co.,* 72 Wash. 420, 130 Pac. 499; *State v. Jakubowski,* 77 Wash. 78, 137 Pac. 448.

It is further contended that the trial court committed error in admitting the provisions of a certain ordinance of South Bend. The enacting clause, the publication clause, and section No. 8 prohibiting the maintenance of pool halls with interior partitions through them which would constitute obstructions such as to conceal a view of the interior of the room from the street. No penalty clause was introduced.

It is contended that this evidence tended to prove the commission of another, different and unrelated offense by appellant, and therefore was very prejudicial; and further point to the fact that the arrangements that existed were exactly the same as when he took over the building.

The theory of the state was, and is, that the provisions of the ordinance were admissible because they tended to show that appellant maintained the place as a resort for gaming. Authorities are cited to the effect that evidence of other crimes is not always inadmissible, but becomes competent and material in certain instances, citing: *State v. Pittam,* 32 Wash. 137, 72 Pac. 1042; *State v. Hazzard,* 75 Wash. 5, 134 Pac. 514; *State v. Morris,* 109 Wash. 490, 187 Pac. 350; *State v. Sigler,* 116 Wash. 581, 200 Pac. 323; *People v. Ellis,* 188 Cal. 682, 206 Pac. 753; *State v. King,* 111 Kan. 140, 206 Pac. 883; Wharton's Criminal Law, § 649.

Appellant testified that he had no knowledge of this ordinance. It was passed and ordered published on September 16, 1918, and gave until September 30, 1918, to arrange pool hall premises to conform to the requirements of the ordinance. It is incumbent upon one to take notice of local ordinances duly enacted and published, the same as statutes. Counsel for appellant admitted to the trial court in arguing the objection, that if he had had knowledge of the ordinance, under proper cross-examination "undoubtedly it might be competent." If that be true, presumptive knowledge is as binding as actual knowledge.

In any event, the court in admitting the provisions of the ordinance, stated that they might have a bearing as to why the building occupied by appellant had remained in the condition it was with reference to the partitions, from the time he got it, it being in the same condition as when he got it; and the court further

stated that the provisions of the ordinance would be received for a limited purpose, and a special instruction drawn concerning the same. No objections or exceptions to the instructions are shown. In fact, the instructions are not brought up. We will presume, therefore, that the trial court properly limited the object of the evidence admitted, and also instructed the jury that they could not consider the guilt of appellant of any separate offense other than that for which he was here on trial, nor consider the provisions of the ordinance except for limited purposes which the law well recognizes. We therefore find no merit in this contention.

The judgment is affirmed.

MAIN, C. J., TOLMAN, PARKER, and MACKINTOSH, JJ., concur.