## STATE v. DUBOIS.

No. 6045. Decided January 22, 1940. (98 P. 2d 354.)

236

*Knox Patterson* and *Karl V. King,* both of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., for respondent.

LARSON, Justice.

Defendant was convicted in the District Court of Grand County of a felony, to wit, embezzlement, and he appeals. Appellant contends (1) that the evidence does not sustain the verdict; (2) that the court did not instruct the jury as to

the law relative to the theory of the defense; (3) that the court erred in not submitting to the jury the question of a lesser offense. There is no substantial dispute as to the facts. Briefly stated they show that from April, 1936 to April 19, 1937, appellant operated for the Utah State Liquor Commission, hereinafter called "the Commission", Package Agency No. 88, located at Thompson, Utah, under a written contract or agreement. Under this agreement appellant was required to keep all monies received from the sale of liquors separate and apart from all other monies received by him, and to remit the same weekly to the Commission. It was also his duty to receive the money for any liquor sold before the liquor was delivered to the purchaser. An audit as of April 15, 1937, revealed that appellant was short in his remittances to the Commission in the sum of $1,081.05; that is, between the middle of May, 1936, and the middle of April, 1937, he had sold liquor amounting in price to $1,081.05 for which he had not accounted to the Commission. When the auditor for the Commission checked the Agency in April, 1937, appellant produced purchase orders of customers for this amount over and above the remittances that had been made and the money on hand. He stated to the auditor that such orders or slips had been overlooked in previous reports and the money therefor was in the bank. At a subsequent date and upon trial appellant contended that the shortage was due to the fact that he had sold liquor on credit and had not yet collected the money for the same. In this connection he testified that when he sold liquor on credit the purchase orders (called "slips" throughout the testimony) were not sent in to the Commission; that as the money was collected the slips were sent in with the remittance. If a credit sale was of a kind of liquor of which the supply was getting low, the slip, although a credit sale, would be sent in and a cash sale slip held back, so he could order more liquor of that brand. "In that way I held back cards representing cash sales", "I held cash tickets, but sent in cash of those tickets to cover tickets that were on a charge account."

"Some cash tickets I held for a month but sent in the cash for the credited cards."

"A. Every article on my report would be accompanied with its purchase price, but possibly one of those cards or possible three or four of the cards in that certain report would be still owing to me, and I had taken the cash that I got on some other sale that wasn't reported on that card, and made up this card."

"A. Well, if the whiskey was the same price, certainly, but if I sold a bottle of whiskey like Seagram $1.85 a quart, and I wanted Gold Bond whiskey, I would send in one card that I would have of Gold Bond, and I could possibly send in two cards that was held back that was on a credit, and use up the other 85 cents. But we always sent in all the money we took in and would hold back just what we had to that was out on credit."

Just after the visit of the auditor, indicated above, appellant borrowed $300 and paid it to the Commission on the shortage. He testified that thereafter his bondsmen paid $500 to the Commission because he was in default; that the total shortage was $1,083.60. He had offered to make monthly payments on the balance due. That on Monday following the 15th day of April, he first told the Commission he had sold liquor on credit. While he did not remember all who had bought liquor on credit, he gave the names of six people to whom he extended credit for liquor. One of these Robertson, was called as a witness by appellant. He testified that he had bought whiskey on credit but paid for it the same or the next day; that he had paid for all liquor so bought before April 14th. Shown several slips for liquor purchased by him, and found among the slips representing the shortage, he testified that all had been paid for before April 14th, and much of it had been purchased on other days than those shown on the slips. The State called as witnesses three of the purported credit buyers named by appellant, each of whom testified they had never bought any liquor on credit; one denied that he had ever purchased any liquor, and never even had a permit. The State also proved definitely that Tommy Brown, to whom appellant claimed to have sold considerable liquor on credit, had died more than three months

before appellant ever opened the package agency. Appellant's wife, called as a witness by him, testified that she had changed the dates on some of the slips at the request of the Commission auditor to make them jibe with the report made April 14th when they were sent in. That is essentially all the evidence and there are no substantial conflicts in it. We consider now the assigned errors. (1) Appellant contends the judgment should be reversed as not sustained by the evidence, because (a) the State did not make a prima facie case, and therefore his motion for a directed verdict should have been granted; (b) there is no evidence that appellant actually had the physical possession of the money he is charged with embezzling; (c) the evidence shows the money alleged to have been embezzled was the property of the State of Utah, and not of the Commission, as charged in the information.

The motion for a directed verdict was made at the close of the State's case in chief. At that time the evidence showed appellant had sold $1,081.05 worth of liquor for which he had not accounted; that he stated the money therefor was in the bank and he would get it the next morning; that he did not have the money in the bank or elsewhere; that under the law he could not sell liquor until he first received the money therefor; that his explanation for not having accounted and remitted the money was that his wife had made out the last reports and had overlooked these slips; that he did not have the money representing the purchase price; the slips were in evidence and some of them dated back to the prior November or five months prior to the audit. The only ground set forth in the motion for a directed verdict was the lack of evidence showing appellant had actually received the money for the liquor that was short. Under the evidence and the law, the motion as made was not well taken and the denial thereof was not error.

As to the second reason, in addition to what we have just stated, the record at the time of the verdict discloses that

appellant had actually received the cash for some of the slips for which he had not accounted and had used this money to cover up and pay for liquor previously sold and unaccounted for, or as he put it to cover a prior shortage. While the exact amount of such transactions does not appear, yet appellant testified that they were frequent occurrences. Furthermore, several persons whom appellant claimed had purchased liquor on credit, which credit went into the shortage, testified they had paid for the liquor. The jury could well believe such witnesses as against appellant. The evidence is ample therefore to sustain a finding that appellant had received a considerable sum of money, making up the alleged shortage, and for which he had not accounted. We may further point out that when appellant admits that he took money received from one sale or transaction and used it to cover a shortage on another transaction, such act constitutes appropriating the money to his own use to cover his prior shortage. *State* v. *Carlstrom*, 94 Utah 159, 76 P. 2d 565; *State* v. *Judd*, 74 Utah 398, 279 P. 953; *State* v. *Olson* 75 Utah 583, 287 P. 181; *State* v. *Christiansen*, 98 Utah 278, 94 P. 2d 472. This point is therefore resolved against appellant.

Does the evidence show that the money alleged to have been embezzled was the property of the State of Utah and not of the Liquor Control Commission as alleged? The argument is based on Section 12, Chapter 43, Laws of Utah 1935, which provides that

"all property * * * all moneys acquired, administered, possessed or received by the commission, and all profits earned in the administration of this act, shall be the property of the state [of Utah] * * *"

Assuming the money claimed to have been embezzled was the property of the State of Utah and not of the Commission, appellant is not in a position to avail himself of that defense. The record is conclusive that appellant was the agent of the Commission, and came into possession of the liquor and the money he received therefor by virtue of such

agency and under his employment as such agent. It is also admitted that appellant was to account for and pay to the Commission all money received from the sale of liquor. The statute provides that any agent or employee who fraudulently appropriates to his use any property of another which has come into his control or care by virtue of his employment as such agent is guilty of embezzlement. Section 103-15-7, R. S. U. 1933. The gist of the offense of embezzlement lies in the breach of the trust or fiduciary relationship existing by virtue of the employment. 9 R. C. L. 1273; notes: 87 Am. St. Rep. 35-47; 15 Ann. Cas. 443; 18 Am. Jur. 578, 580; *State* v. *Karri,* 51 Mont. 157, 149 P. 956, L. R. A. 1916F, 90; *Grin* v. *Shine,* 187 U. S. 181, 23 S. Ct. 98, 47 L. Ed. 130. And it was between the Commission and the appellant that the trust or fiduciary relationship existed; it was his duty and obligation to the Commission that he breached; he could not pay the money to the State or any other party except the Commission without breaching that trust and duty; it was for the Commission that he received, and it was the Commission's right to possession and control and distribution of the money that he was to protect and safeguard. He owed no duty or relationship to any other person in regard to the money. He received the money for and on behalf of his employer, the Commission, and as far as he was concerned, as far as his rights and obligations go, the money belonged to and was the property of the Commission. Ordinarily any general or special ownership or lawful possession is sufficient to sustain an allegation of ownership in embezzlement; and where general ownership is in one person and a special ownership in another, ownership may be laid in either. *Mecham* v. *State,* 45 Fla. 71, 33 So. 983, 110 Am. St. Rep. 61; *Com.* v. *Norton,* 11 Allen, Mass., 110; *State* v. *Chapin,* 74 Or. 346, 144 P. 1187; *State* v. *Morris,* 109 Wash. 490, 187 P. 350. And see other cases cited in the following notes. Ownership of a promissory note may be laid in an indorser to whom the indorsee has delivered it to collect the interest or otherwise control it. *People* v. *Treadwell,* 69 Cal. 226, 10 P.

502. A local lodge of a benefit association was held to have such a property right in beneficiary funds collected for transmission to the grand lodge, until so transmitted, as that ownership was properly laid in it. *State* v. *Knowles*, 185 Mo. 141, 83 S. W. 1083. Where the vendee of land contracts to deposit the purchase price to the credit of one of two joint owners of the property, title to the money may properly be laid in him. *State* v. *Probert*, 19 N. M. 13, 140 P. 1108. Ownership of a general or special deposit in a bank may be laid in the bank. *Reeves* v. *State*, 95 Ala. 31, 11 So. 158; *State* v. *Morris*, 109 Wash. 490, 187 P. 350. So ownership may be laid in an administrator or executor, *People* v. *Smith*, 219 N. Y. 222, 114 N. E. 50; *Id.*, 172 App. Div. 826, 159 N. Y. S. 1073. It may be alleged to be in the estate of a deceased person pending administration, *Hendee* v. *State*, 80 Neb. 80, 113 N. W. 1050; or in a trustee, *People* v. *Royce*, 106 Cal. 173, 37 P. 630, 39 P. 524; or in a consignee, *Waterman* v. *State*, 116 Ind. 51, 18 N. E. 63; or an agent, *Peters* v. *State*, 12 Ala. App. 133, 67 So. 723; or in a carrier, *Riley* v. *State*, 32 Tex. 763; or in a bailee, *United States* v. *United States Brokerage & Trading Co.*, D. C. 262 F. 459; *Waters* v. *State*, 15 Ga. App. 342, 83 S. E. 200. And money stolen may be embezzled from the thief, *State* v. *Littschke*, 27 Ore. 189, 40 P. 167. According to the weight of authority, one who assumes to act for another, and thereby receives money or property for him, or on his account, is estopped to deny the right of such other person to such money or property in order to escape responsibility for embezzling it. *United States* v. *United States Brokerage & Trading Co.*, supra; *People* v. *McLean*, 135 Cal. 306, 67 P. 770; *People* v. *Robertson*, 6 Cal. App. 514, 92 P. 498; *State* v. *Spaulding*, 24 Kan. 1; *State* v. *Silva*, 130 Mo. 440, 32 S. W. 1007; *Ex parte Ricord*, 11 Nev. 287; *State* v. *Gross alias Kimble*, 91 Ohio St. 161, 110 N. E. 466. A person who receives a draft and the proceeds thereof as treasurer of an association, and embezzles the money is estopped to assert that the money was not the property of the association. *People* v. *Royce*, supra. And where a blank

warrant was delivered to the secretary of a school board with authority to fill it out for the amount of a claim against the board, but he filled it out for a larger amount and appropriated the excess he was estopped to assert that he did not receive the excess as bailee. *Compton* v. *State,* 102 Ark. 213, 143 S. W. 897. And so it seems to be well settled that an agent or employee who by means of the facilities which his employment and the trust and confidence in him affords, embezzles property which comes into his hands by virtue of such employment, cannot escape liability for embezzlement by a plea that the legal title to the property was not in the employer. In addition to the cases already cited see *People* v. *Leonard,* 106 Cal. 302, 39 P. 617; *Kossakowski* v. *People,* 177 Ill. 563, 53 N. E. 115; *People* v. *Carter,* 122 Mich. 668, 81 N. W. 924; *Calkins* v. *State,* 18 Ohio St. 366, 98 Am. Dec. 121; *State* v. *Reynolds,* 65 N. J. L. 424, 47 A. 644; *Shinn* v. *Com.,* 32 Grat. 899, 73 Va. 899; *People* v. *Hawkins,* 106 Mich. 479, 64 N. W. 736; *State* v. *Dawe,* 31 Idaho 796, 177 P. 393; *State* v. *Carter,* 67 Ohio St. 422, 66 N. E. 537. This point is resolved against appellant.

(2) Appellant's next group of assigned errors go to the point that the court failed to instruct the jury with reference to the defendant's theory of the case, or with reference to the defense offered by the defendant. No written requested instructions were submitted to the court by appellant nor was any oral request made that the court instruct the jury on any particular point, matter, question or theory. After the instructions were read defense counsel in open court stated into the record that he had no exceptions to the charge as given. Such declaration where no requests had been made can only mean that appellant was satisfied with the instructions given; that they fairly covered the issues raised, and properly presented to the jury all questions and theories which counsel deemed important or of consequence and which he wished to have called to the attention of the jury. A party is entitled to have the jury instructed on the law governing the issues according to his

theory of the case, provided such theory is tenable as a matter of law, or finds possible support in the evidence. But he will not be heard to complain of failure to give instructions if the rules therein set forth are not a correct statement of the law; or if such statement of law is outside the issues to be determined by the jury; or if such claims or theory do not find possible support in the evidence, even though such instruction would state a rule of law academically sound. Counsel who should know better than the court the theory of his case, who should know what issues he desires the jury to pass upon, and the reason or purpose for producing certain evidence or arguing certain deductions from it, in fairness to the court and to his client should properly and timely call to the court's attention such points as he desires covered by the charge and such special instructions as he desires given. And this court should be slow to say that neither counsel nor the trial court knew the theory of the defense in a criminal case, or the matters upon which they wished to make an issue and have the jury pass. Certainly a defendant may circumscribe his defense, and insist on resting his cause upon a particular point if he so desires, without the court injecting other theories into the case to suit its whims. Having approved the instructions as given and requested no others, counsel should not be heard to complain that the court did not constitute itself counsel in the cause, and submit other theories not urged by defendant just because the court may think such theories of defense could have been urged. It is the court's duty to try the issues made by the parties and not to make cases for them. We have held that where instructions are palpably erroneous to such an extent that they would, if followed by the jury, prevent a fair or proper determination of the issues, we may notice the error without exception having been taken. *State* v. *Cobo*, 90 Utah 89, 60 P. 2d 952; *State* v. *Waid*, 92 Utah 297, 67 P. 2d 647. But we are aware of no holding that the mere failure to give an instruction which might have been given but which was not requested or called to the attention of the court, and

no exception taken to the failure to give it will be noticed on appeal. And especially is this true where as here no error in the charge as given is pointed out; no suggestions made in brief or oral argument as to what matter or points should have been covered in the instructions which were not covered; and no indications made of any theory of defense, or law applicable thereto, which was not submitted to the jury. Appellant simply argues that the instructions given did not cover the law applicable to the theory of defendant without pointing out wherein the instructions fell short, or what theory of defense was not covered by the charge as given. And we can conceive of none, except perhaps that the property alleged to have been embezzled was the property of the State of Utah, and not of the Liquor Control Commission. We have already disposed of this matter above, and since such claim was not available as a defense the failure to cover it with instructions is not error.

(3) Appellant's remaining point is that the court erred in not submitting to the jury the question of a lesser offense. He contends that there is no definite proof as to the amount of money actually received by appellant and for which he had not accounted and which he had not paid over, and therefore the jury should have been instructed that if they found from the evidence that appellant had embezzled some money as charged, but they were not satisfied that he had embezzled more than fifty dollars, they should find him guilty of a lesser offense, or that the jury should have been instructed to show by the verdict the amount that had been embezzled, and no such instruction was given to the jury. The first answer to such contention is that no such instruction was requested and no exception taken to the failure to so instruct. Nor was any such matter suggested or called to the attention of the trial court, either during the trial proceedings or on motion for a new trial. But passing by this answer and going to the heart of appellant's contention, he relies upon Sections 105-34-5 and 105-34-6, R. S. U. 1933, which provide that when a crime is distinguished

into degrees the jury, if they convict, must find the degree of crime of which defendant is guilty; and that the jury may find the defendant guilty of any offense necessarily included in that charged in the information. The difficulty with appellant's position is that the crime of embezzlement is not divided into degrees, nor is there any other offense included in the crime of embezzlement as charged in the information. Embezzlement is a statutory crime, defined and controlled by Chapter 15 of Title 103, being sections 103-15-1 to 103-15-11, R. S. U. 1933. That statute defines embezzlement as "the fraudulent appropriation of property by a person to whom it has been intrusted." Section 103-15-1. By Section 7 of the chapter any clerk, agent, or servant of any person who fraudulently appropriates to his own use any property of another which has come into his possession or into his control by virtue of his employment is guilty of embezzlement. There are no degrees of embezzlement or divisions thereof, as there are in homicide, arson, and burglary. Embezzlement of less than fifty dollars is not made a separate crime from embezzlement of more than fifty dollars. There is no definition of an offense of embezzlement of property of less than fifty dollars in value, as there is of larceny of property of less than fifty dollars in value, to wit petit larceny. To be included in a greater offense as a lesser offense, an act must be one that is itself defined by statute as an offense independent of and apart from that defined as the greater offense in which it may be included, such as larceny in robbery; simple assault in various aggravated or more serious assaults; and petit larceny in grand larceny. The only distinction made as to embezzlement is not as to crime but as to penalty and is set forth in Section 103-15-11, reading:

"Every person guilty of embezzlement is punishable in the manner prescribed for feloniously stealing property of the value of that embezzled, and where the property embezzled is an evidence of debt or right of action the sum due upon it, or secured to be paid by it, shall be taken as its value."

The penalty is imposed by the court, not the jury, and under the statute is roughly gauged by the extent of culpability of the embezzler. In the instant case the appellant upon the witness stand readily admitted the appropriation to his own use of at least three hundred dollars of the money alleged to have been embezzled. So admitting, and having made no request that the matter be submitted to the jury, he cannot now claim as reversible error the failure of the court to submit to the jury the determination of the fact.

We have examined the other assignments and find them without merit. The judgment is affirmed.

MOFFAT, C. J., and WOLFE, McDONOUGH, and PRATT, JJ., concur.