8

305 P.2d 473

The STATE of Utah, Plaintiff and
Respondent,

v.

Robert Elton WOODALL, Defendant and
Appellant.

No. 8540.

Supreme Court of Utah.

Dec. 18, 1956.

E. R. Callister, Atty. Gen., Walter L. Budge, Asst. Atty. Gen., for appellant.

E. M. Garrett, Salt Lake City, for respondent.

WORTHEN, Justice.

Defendant was convicted upon a verdict of a jury of the crime of pandering and sentenced to the State Prison for a term not to exceed 20 years as prescribed by law, and he appeals.

The offense charged was that defendant "induced, persuaded, encouraged and enticed Ida E. Duclo, * * * to become a prostitute." The offense charged is one of several proscribed in 76–53–8, U.C.A.1953, the pandering statute.

It is undisputed that during the fall and early winter of 1954 a house of prostitution was being run in a trailer house on U. S. Highway 91 between Moab and Monticello in San Juan County, first in Kane Springs and then on Blue Hill. The trailer house was partitioned, one half was used as a bar and the other half for prostitution. It is also undisputed that defendant was a frequent visitor at this house of prostitution—the evidence of the State tending

to show him to be the proprietor, and the evidence of defendant tending to show him to be a patron.

Ida E. Duclo, the prosecutrix, came to Hole In The Rock in San Juan County in late September and worked as a waitress in a cafe at that place until early December. Defendant and the two prostitutes, working in the trailer house, a Bobby Miller, and a Jerry McAllister, were frequent visitors at the cafe. On December 12, 1954, the prosecutrix was approached by defendant who represented that Jerry had left the State, and defendant requested that the prosecutrix go to work as a bartender in the half of the trailer house used for a bar, for which she would be paid $5 per evening and 25¢ for each "Bee" shot she would be able to sell to the patrons.

Prosecutrix, being unemployed at the time, the cafe having closed, and having to support her unemployed husband, accepted the job of bartender at the trailer house, although she knew at the time prostitution was being practiced thereat. She remained working in the capacity of a bartender only two days before taking on additional duties as well, and the only question is whether defendant "induced, persuaded, encouraged or enticed her" to perform those additional duties of prostitution.

The State relies primarily upon a conversation between defendant and the prosecutrix which occurred on the 14th of December, 1954, after prosecutrix had begun work as a bartender but before she extended her activities to prostitution. The conversation was overheard by Bobby Miller, and both she and the prosecutrix testified that the conversation on the part of the defendant was substantially as follows:

(1) (Prosecutrix's version) "He said that since I started working there that I'd been seen around town with Bobby Miller quite a bit and that I had the same reputation that Bobby Miller had and he asked me if I wouldn't go ahead and work as a prostitute."

(2) (Bobby Miller's version) "He told us that since she'd been seen around Moab with me and that I had such a bad reputation that her reputation was the same as mine now so she might as well go all the way. She'd get more money. There was more money in that way * * * he said it would be a better deal all the way around for her. That she'd have more money and things like that."

The defendant's main contention on appeal is that the motion to dismiss the case at the close of plaintiff's evidence should have been granted because (1) there was insufficient evidence as a matter of law to establish the crime, and (2) that if there was sufficient evidence it was not sufficiently corroborated to establish the crime under Section 77–31–14, U.C.A.1953, requiring corroboration of the prosecutrix's testimony in cases of this nature.

■ As to the first point, it would seem that there is sufficient evidence to support the verdict if the testimony of the prosecutrix is believed. She testified not only to the inducement above, but also that defendant was a general errand boy and manager around the trailer house, and that she paid him $5 (half her fee) from each act of sexual intercourse performed. There is in the instant case sufficient evidence of defendant's guilt to go to the jury.

This court said in State v. Penderville :[1]

"It has been repeatedly held by this court that upon a motion to dismiss or to direct a verdict of not guilty for lack of evidence that the trial court does not consider the weight of the evidence or credibility of the witnesses, but determines the naked legal proposition of law, whether there is any substantial evidence of the guilt of the accused, and all reasonable inferences are to be taken in favor of the state * * *."

To support the contention that there was insufficient corroboration of the testimony of the prosecutrix, defendant cites and relies upon State v. Smith.[2] In that action the type of pandering charged was the same as in the instant case. The only evidence other than the testimony of the prosecutrix was a sister's statement that the defendant jokingly had remarked that she could make more money doing something other than being a waitress, and that the prosecutrix was seen to give defendant some money on one occasion; testimony of another woman that *she* had given accused some money, and testimony of an officer that he had seen the prosecutrix and accused together on a number of occasions.

It will be noted that in State v. Smith, supra, only the sister's statement went to the point of showing the slightest possibility of inducement or encouragement, and it was very equivocal, susceptible of many different meanings. The other testimony involved did not tend to connect the defendant to the crime of persuasion or encouragement, although it may have had efficacy to convict of other offenses not charged by that information.

■ The testimony in the instant case is quite different. Here we have a corroborating witness, albeit another prostitute, who testified as to certain statements made by defendant, which, although not entirely unequivocal, tended to only one meaning, namely, that Ida E. Duclo should become a prostitute. This would seem to be sufficient corroboration to satisfy the requirements of corroborative testimony.

■ As was said in State v. Vigil,[3] in speaking of the quantum of corroboration

1. 2 Utah 2d 281, 286, 272 P.2d 195, 198.

2. 2 Utah 2d 358, 274 P.2d 246.

3. Utah, 260 P.2d 539, 541.

necessary to enable the State to convict when the testimony of an accomplice is involved:

"In State v. Erwin, 101 Utah 365, 120 P.2d 285, this court stated that the corroboration need not go to all the material facts as testified by the accomplice, nor need it be sufficient in itself to support a conviction; it may be slight and entitled to little consideration. However, the corroborating evidence must connect the defendant with the commission of the offense, State v. Lay, 38 Utah 143, 110 P. 986; and be consistent with his guilt and inconsistent with his innocence, State v. Butterfield, 70 Utah 529, 261 P. 804. The corroborating evidence must do more than cast a grave suspicion on the defendant and it must do all of these things without the aid of the testimony of the accomplice."

■ There is nothing to indicate that Section 77–31–14, supra, requiring corroboration in cases of this nature requires any more corroboration than already set down by this court in the above case dealing with corroboration of the testimony of an accomplice. It would seem, a fortiori, that the same rule would apply to both matters. In the instant case the corroborative evidence is nearly as strong on the question of persuasion as the evidence of the prosecutrix tending to connect defendant with the crime of inducing Ida E. Duclo to become a prostitute.

The remainder of defendant's assignments of error deal with jury instructions. He argues that the court failed to define (1) criminal intent and (2) corroboration, and that the jury was not properly instructed on defendant's theory of the case.

■ In the first instance, it is to be noted that the instructions given as to criminal intent and corroboration were not excepted to, and no additional instruction to cover either criminal intent or corroboration was requested by defendant. Certain instructions were requested by defendant which dealt with the materiality of success as an element of the crime of pandering. Defendant requested the court to instruct that unless the inducement by defendant was successful as the actual moving cause in the adoption by Ida Duclo of a course of prostitution, defendant could not be convicted. These instructions were properly refused by the court for the reason that success is not a necessary element in the crime charged.[4]

■ On this appeal for the first time, defendant now argues that he was entitled to an instruction that the State must prove beyond a reasonable doubt that Ida E. Duclo had not previously been a prostitute, since

4. State v. Gates, 118 Utah 182, 221 P.2d 878.

the statute under which he was charged prohibits encouragement or inducement "to become a prostitute."

Assuming without conceding the correctness of defendant's contention that solicitation of a former prostitute is not covered by the statute it would seem that there was no competent evidence in the case to merit such an instruction, even if requested which request was not made. The only evidence on the point was that Mrs. Duclo testified that she had never previously been a prostitute, and Bobby Miller testified that Mrs. Duclo told her when she began practicing prostitution, "I'll try anything *once.*" To controvert this evidence the defense witness, Jerry McAllister, testified that before she left the State Mr. and Mrs. Duclo had approached her relative to having Mrs. Duclo practice prostitution at the trailer house, and that Mr. Duclo, in the process of the conversation, said that his wife had worked as a prostitute before. Jerry McAllister then said that she questioned Ida Duclo about prostitution, but that Ida was unable to give any answers, and Jerry refused the request. Ida, the prosecutrix, testified earlier that she had no conversation with Jerry McAllister relative to prostitution, but that her husband had a private conversation with Jerry on one of their visits to the trailer house before she began work there.

█ Defendant contends that this evidence merits a special instruction of former prostitution or lack thereof without a request for one, and that this failure and the failure of the court to define the terms of criminal intent and corroboration without request for such definition constitutes reversible error.

We cannot agree. It should be observed that the court instructed the jury in the words of the statutes that they must be satisfied beyond all reasonable doubt that defendant "had the intent to cause Ida E. Duclo to *become* a prostitute," and "That with such intent the defendant adopted and executed a course of conduct, or spoke such words to Ida E. Duclo, or both, as constituted either encouragement, enticement, persuasion or inducement for her to *become* a prostitute." He further instructed them that the words and conduct must have had a reasonable tendency "to cause Ida E. Duclo to become a prostitute."

█ It might very well be that if defendant had requested a specific instruction on former prostitution, he would have been entitled to it, but without such request we cannot say that defendant was, by the failure to give a special instruction on this point, precluded from having a fair and proper determination of the issues.

As was said by this court in the case of State v. Dubois.[5]

5. 98 Utah 234, 98 P.2d 354, 359.

" * * * A party is entitled to have the jury instructed on the law governing the issues according to his theory of the case, provided such theory is tenable as a matter of law, or finds possible support in the evidence. But he will not be heard to complain of failure to give instructions if the rules therein set forth are not a correct statement of the law; * * * or if such claims or theory do not find possible support in the evidence, * * *. Counsel who should know better than the court the theory of his case, who should know what issues he desires the jury to pass upon, and the reason or purpose for producing certain evidence or arguing certain deductions from it, in fairness to the court and to his client should properly and timely call to the court's attention such points as he desires covered by the charge and such special instructions as he desires given. And this court should be slow to say that neither counsel nor the trial court knew the theory of the defense in a criminal case, or the matters upon which they wished to make an issue and have the jury pass. * * * It is the court's duty to try the issues made by the parties and not to make cases for them. We have held that where instructions are palpably erroneous to such an extent that they would, if followed by the jury, prevent a fair or proper determination of the issues, we may notice the error without exception having been taken.

* * * But we are aware of no holding that the mere failure to give an instruction which might have been given but which was not requested or called to the attention of the court, and no exception taken to the failure to give it will be noticed on appeal."

Judgment affirmed.

McDONOUGH, C. J., concurs.

HENRIOD, J., concurs in the result.

WADE, J., concurs in the opinion of WORTHEN, J., as amplified by the views expressed by CROCKETT, J.

CROCKETT, Justice (concurring specially).

I concur, but add this comment, which I think is appropriate, explanatory of the quotation from the Penderville case in the main opinion. It seems to me that it is not universally true that, "upon a motion to dismiss or to direct a verdict of not guilty for lack of evidence that the trial court does not consider the weight of the evidence or credibility of the witnesses, * * *." [2 Utah 2d 281, 272 P.2d 198.] This is true only where the court determines that there is what it regards as "substantial evidence" to support the finding made. If it so determines, then the court

does not weigh the evidence nor consider the credibility of witnesses, but leaves those matters to the trier of the facts. However, even though there may be some evidence to support a given proposition or element of an offense, it might be so unworthy of belief, at variance with known physical facts or circumstances, or so slight in comparison to countervailing evidence, that the court must conclude that upon the whole evidence reasonable minds could not find guilt beyond a reasonable doubt. In such instances the court would rule as a matter of law that the State had failed to make a case. Therefore, it seems clear that in determining the basic proposition whether there is "any substantial evidence" it is sometimes necessary to give consideration to the weight of the evidence and the credibility of witnesses.

Likewise, it seems that in a criminal case the use of the phrase, "if there is *any substantial evidence* of the guilt of the accused * * * the verdict will stand, * * *" does not fully represent the correct concept. The emphasized phrase can be confused with the use of the similar phrase in civil cases wherein the quantum of proof requisite to support a verdict is obviously different. The statement would be true in a criminal case only if amplified by the explanation that "any substantial evidence" must be understood as meaning sufficient evidence from which reasonable minds might find guilt beyond a reasonable doubt.